John H. Lawson,

*vs.*

Household Finance Corporation, a corporation of the State of Delaware.

*New Castle, July* 16, 1929.

*William Prickett*, for complainant.

*E. Ennalls Berl*, of the firm of Ward & Gray, and *Frank R. Hubachek*, of Minneapolis, Minn., and *F. B. Hubachek*, of Chicago, Illinois, for defendant.

THE CHANCELLOR: The complainant's case rests on the proposition that the ninth article of the certificate of incorporation is not legally binding on stockholders of the defendant corporation and that therefore he is entitled to a transfer of the stock to himself notwithstanding that the conditions and restrictions set forth in that article have never been complied with.

He summarizes the points of his argument in the following paragraph at the foot of his brief:

"To sum up the complainant's position: First, as a general proposition, the law views with disfavor restraints on alienation; the provision excising good will, one of its most valuable assets, from stock, is, in substance, a most effective restraint. Second, such a provision must have direct statutory authority and must not be inferred 'from ambiguous expressions' in the law; there is no such statutory authority in the General Corporation Law of Delaware. Third, the provisions in question are unreasonable and arbitrary and have no connection with the end which is advanced to justify them. Lastly, the provisions of the charter are an attempt to insert into corporate structure the characteristics of a partnership."

I shall consider the points thus made in the order of their statement. First, then, to the general proposition that the law views with disfavor restraints on alienation, the defendant interposes no objection. As a general proposition, there can indeed be none. But that the law will in no case admit of any sort of restraint upon alienations is not of course true. Examples need not be enumerated of where restraints reasonable in their nature are regarded by the law as permissible.

In this case the particular question is whether the restraint imposed upon the alienation of stock of a corporation under such charter provisions as we find here and under such circumstances as the answer shows this corporation's business to be enveloped in, can be said to offend against the law.

It is to be noted that the charter does not assume to take away absolutely the right of a stockholder to alien his stock. A way is provided for him to sell his stock and take out of the corporation his investment therein. The only restraint imposed is that a particular person, viz., the corporation, shall first have the opportunity to buy the stock, and next that the price, if not mutually agreed upon, shall be determined by an appraisement made in a designated manner.

There is thus no attempt made to inhibit the stockholder from ever disposing of his stock. There is an attempt made to compel the stockholder to deal first with only one of the possible purchasers—the corporation itself. If that purchaser refuses the stock, then it is liberated from all restraint. The answer, which must be taken as true in all of its averments on a motion for

decree notwithstanding answer (*Jones v. Maxwell Motor Co.*, 13 *Del. Ch.* 76, 115 *A.* 312), shows that the partial restraint upon alienation which the charter imposes is decidedly in the best interests of the corporation and well calculated to promote the welfare of its stockholders. Where reasonable restraints founded in considerations which favor the corporate welfare are imposed in favor of the acquisition of a corporation's stock by the corporation itself, the authorities hold that such restraints are not offensive to the general policy of the law which favors the freedom of alienation. Indeed the complainant concedes this for on the brief filed by his solicitor the statement is made that "it is true that in the power of regulation may be included the obligation of first offering the stock to the corporation or to the then stockholders." The following authorities hold that public policy is not offended by such a provision: *Farmers, etc., Co. v. Laun*, 146 *Wis.* 252, 131 *N. W.* 366; *Casper v. Kalt-Zimmers Mfg. Co.*, 159 *Wis.* 517, 149 *N. W.* 754, 150 *N. W.* 1101; *Sweetland v. Quidnick Co.*, 11 *R. I.* 328; *Ex parte Penney, L. R.* 8 *Ch. App.* 446; *In re Bede Steam Shipping Co., L. R.* 1917 (1) *Ch.* 123; *In re Copal Varnish Co., L. R.* 1917 (2) *Ch.* 349; *Borland's Trustee v. Steel Bros. Co., L. R.* 1901 (1) *Ch.* 279; *Wright v. Iredell Telephone Co.*, 182 *N. C.* 308, 108 *S. E.* 744; 6 *Thompson on Corporations*, § 4156. The cases just cited are cases where the restraint was imposed by charter provisions. But even where the charter is silent upon the question and the subject is undertaken to be dealt with in by-laws, cases are to be found which hold that the restraint is nevertheless a valid one. The following are such cases: *Baumohl v. Goldstein*, 95 *N. J. Eq.* 597, 124 *A.* 118; *New England Trust Co. v. Abbott*, 162 *Mass.* 148, 38 *N. E.* 432, 27 *L. R. A.* 271; *Barrett v. King*, 181 *Mass.* 476, 63 *N. E.* 934; *Nicholson v. Franklin Brewing Co.*, 82 *Ohio St.* 94, 91 *N. E.* 991, 37 *Am. St. Rep.* 764, 19 *Ann. Cas.* 699. These cases, though they may be in dissent with others which may be cited upon the question of the competency of by-laws to define restraints upon alienation, are in accord with the decided weight of authority to the effect that so far as public policy is concerned a reasonable restraint upon alienation of stock which is designed to give the issuing company the first call upon its purchase is unobjectionable.

To the suggestion contained in the complainant's first contention that the provision excising good will from the stock as an element entering into its appraisal for purposes of sale to the corporation, constitutes an effective restraint upon the stock's alienation, it is sufficient answer to point out that such elimination of good will value is one of the terms of the contract by which the stock is held and is voluntarily accepted by the stockholder when he assumes the status of stockholder. A more proper characterization of it would be, not as a restraint, but as a term in a contract of sale by which the parties agree to be bound in arriving at the price in case a sale is desired. A corporate charter is in one of its aspects a contract between the corporation and its stockholders (*Morris, et al., v. American Public Utilities Co.*, 14 *Del. Ch.* 136, 122 *A.* 696) and stock issued in accordance with charter provisions is held by the stockholder subject to all the lawful terms which the contract embodies. That such a provision as we are here considering is essentially of a contract nature and one that parties may voluntarily accept is held in the following cases: *Garrett v. Phila. Lawn Mower Co.*, 39 *Pa. Sup. Ct.* 78; *Fitzsimmons v. Lindsay*, 205 *Pa.* 82, 54 *A.* 488; *Scruggs v. Cotterill*, 67 *App. Div.* 588, 73 *N. Y. S.* 882. Even though the price which the stockholder must take for his stock was far less than its true value, yet so completely was the matter regarded as lying in the field of contract engagements that the court in the English case of *Borland's Trustee v. Steel Bros. Co.*, *supra*, refused in any way to countenance a disregard of the agreement.

Second. The next contention advanced by the complainant is that the provisions of the ninth article of the charter must have direct statutory authority for its adoption by the corporation, must not be inferred from ambiguous expressions in the law, and that there is no direct statutory authority in the act under which the defendant was created for the adoption by it of such provisions as this as a part of its charter power. The defendant answers this contention by pointing to certain provisions of the Delaware act as conferring corporate power to adopt the article in question. These provisions are that the corporation has power conferred upon it to make by-laws *inter alia* "for the certification and transfer of its stock;" that "the shares of stock shall be * * * transfer-

able on the books of the corporation in such manner and under such regulations as the by-laws provide;" and generally that the corporation shall have such powers not inconsistent with law as may be necessary or convenient to the attainment of the objects of the corporation.

The defendant argues that the provisions of the ninth article are but a species of rules and regulations governing the transfer of its stock and that being such the corporation has statutory authority to adopt them even by by-law enactment, and *a fortiori* by charter reservation. *McDowell v. Bank of Wilmington & Brandywine*, 1 *Har.* 27; and *Nicholson v. Franklin Brewing Co.*, 82 *Ohio St.* 94, 91 *N. E.* 991, 37 *Am. St. Rep.* 764, 19 *Ann. Cas.* 699, are cited by the defendant as authority to support the proposition that from statutory authority to regulate transfers of stock, may be deduced a power to impose upon the right of transfer such conditions as the article here under debate undertakes to impose.

Whether there be merit in this argument, I find it unnecessary for me to say, for the reason that there is another consideration which in my judgment is so clearly determinative of the question of power that the argument just mentioned need not be further considered. That consideration is as follows:

The statute under which the defendant was incorporated gives power to all corporations created under it to purchase, hold, sell and transfer shares of their own capital stock. *Section* 19 (*Rev. Code* 1915, § 1933). The defendant in its certificate of incorporation took this power, phrasing it in the words of the statute.

This corporation clearly therefore had and has power to purchase its own stock. The making of contracts to purchase is an indispensable adjunct to an exercise of the power to acquire. The provisions of the ninth article of the charter are nothing more nor less than the definition of the terms of a contract by which each person who becomes a stockholder binds himself to afford to the corporation an opportunity to purchase his stock in the exercise of an expressly delegated power. When the matter is examined in this light, it thus becomes unnecessary to resort to what the complainant calls "ambiguous expressions" in the

law, as the complainant argues was done in the cases just referred to as cited by the defendant, for support of authority in the corporation to make the contract of purchase here objected to as unauthorized.

Third. The next contention relied upon by the complainant is that the provisions are unreasonable and arbitrary and have no connection with the end which is advanced to justify them. One of the points appropriate for consideration under this head is that the price at which the stockholder must sell his stock is a price which contains no allowance for the value of the asset item of good will. I can see no objection to this. It is merely a matter of contract, and certainly parties are at liberty to stipulate upon the contract's terms. Of course if the terms are unconscionable, no court of equity would assist in enforcing them. But there is nothing inequitable in these terms, especially when it is remembered that when the complainant's transferror bought the stock, the price paid by her took no account of the good will. She paid the book value with the item of good will eliminated. How can it be said to be unreasonable or arbitrary to require her, in case she sells, to forego any profit on that which she in substance never bought? But aside from that, she knew the basis of estimating the price which she was to receive in case of sale and it was entirely competent for her to agree to become a stockholder on that basis. If she did not like the terms of the contract that defined her relationship, she need not have accepted them. The choice was a voluntary one made with full knowledge and free from anything like fraud or deceit.

It is further said that it is unreasonable and arbitrary to allow the appraisers to be drawn only from the body of interested stockholders. If the motive of self interest is calculated to prompt the appraisers to fix a price unfair to the selling stockholder, the stockholder should have given due weight to that consideration before deciding to assume the relationship. Having voluntarily agreed to abide by the judgment of appraisers selected in the manner specified, it is difficult to see how the stockholder can repudiate the agreement. Of course if fraud were present in the appraisers' conduct, the stockholder might have a just cause for relief. But there is no question of fraud raised in this case.

Another contention made under this head is that the provisions in the ninth article of the charter are unreasonable and arbitrary because they have no connection with the end which is advanced to justify them. Aside from the question of whether, this being a matter of contract for purchase entered into by the corporation in clear pursuance of corporate power statutorily conferred, the question of motive or purpose to be subserved by the contract can be properly considered, there can be no doubt, under the authorities hereinbefore cited, that this corporation's business, which is so peculiarly dependent upon the extraordinary vigilance and intelligent application of its personnel, is calculated to be advanced and its continued success promoted by a plan which admits its employees to a share in its ownership. Unusual interest in the company's success and the consequent impulse to put forth extra effort to promote it is the end which the plan seeks to subserve. If the identification of ownership with personnel has no connection with this end, it is apparent that the numerous schemes of employee-participation in ownership with which the modern business world is replete, are founded on a false industrial philosophy. At all events, the answer in this case, whose averments must be taken as true, shows that there is a connection between the end sought and the plan adopted. In that state of the matter, it would be highly improper for the court to enter a decree against the defendant notwithstanding the answer.

Lastly, it is argued that the provisions of the ninth article constitute an attempt to insert into a corporate structure the characteristics of a partnership. In answer to this, I ask, what of it if there is such an attempt? In so far as that attempt is impossible of accomplishment by reason of the inherent legal qualities of a corporation on the one hand and a partnership on the other, it will of course prove abortive. An outstanding characteristic of a partnership in so far as its economic advantages are concerned is that its constituency is animated by a deep personal interest in its successful operation, and efficiency in its conduct is thereby calculated to be secured. That the plan adopted by this corporation to keep stock ownership among its employees is designed to reap the benefit of this sort of advantage

which is thought to inhere in a partnership, is plain. There can be no objection to that however. On the contrary such a purpose is manifestly commendable. If it can be advanced consistently with the principle of corporate entity, no possible objection can be taken thereto. There is no violation of the corporate principle shown in this case and the last contention just stated as made by the complainant is therefore without merit.

I may say further that the complainant's contention that the scheme of the ninth article is an attempt to insert into the corporate structure the characteristics of a partnership, contains in itself a refutation of the complainant's third point, viz., that the scheme has no connection with the end which is advanced to justify it.

Motion denied. Let an order be prepared accordingly.

NOTE.—Upon the filing of the foregoing opinion the complainant elected to take a final decree dismissing the bill, from which an appeal was taken to the Supreme Court and the Chancellor's decree affirmed. See *post p.* 343, 152 *A.* 723.