GEORGE DEB. GREENE,

*vs.*

E. H. ROLLINS & SONS, INCORPORATED, a corporation of the State of Delaware.

*New Castle, July* 11, 1938.

   *Clarence A. Southerland* and *Paul Leahy,* of the firm of Ward & Gray, for complainant.

   *Aaron Finger,* of the firm of Richards, Layton & Finger, for defendant.

   THE CHANCELLOR: The defendant was organized in November, 1930. It is the successor to a corporation of similar name which was created under the laws of the State of Maine. Complainant was an officer and director of the Maine corporation and a creditor thereof, holding its notes in the amount of forty thousand dollars. The Maine corporation met with financial difficulties and a plan was devised for the habilitation of its affairs. This plan was

effectuated through the organization of the defendant corporation under the laws of this State, which continued the business of the Maine corporation. The obligations of the Maine corporation were provided for. For the forty thousand dollars of the Maine corporation's notes which the complainant held, he received the eight hundred shares of the common stock of the defendant which he now holds and which are the subject of controversy in this suit.

Upon the effectuation of the plan in 1930, the complainant became an employee of the defendant and continued as such until December 31, 1931. New money in the amount of $2,100,000 was put into the defendant corporation as per the provisions of the plan through the sale of shares of the defendant's $7.00 Cumulative Convertible Participating Preferred Stock.

The certificate of incorporation of the corporation, in paragraph 11, Article Fourth thereof, is of importance in this case. In general it imposes restrictions and regulations upon the sale and transfer of shares of common stock by any holder thereof. So much of the paragraph as is necessary to an understanding of the issue of law raised by the demurrer in this case, is as follows:

"(11) In order to insure the harmonious conduct of the business of the Corporation and to prevent the introduction of any Common Stockholder for any reason deemed unsuitable, the rights of the holders of Common Stock to dispose of the shares of such stock shall be subject to the following restrictions (which shall constitute an agreement between the holders of Common Stock of the Corporation and the Corporation and shall enure to the benefit of and be binding upon the executors, administrators, legal representatives, successors and assigns of all said parties):

(Here follow provisions giving the corporation the first privilege of buying in case any holder of common stock desires to sell his shares. The paragraph then proceeds with provisions applicable to a case where the corporation desires to compel an unwilling common stockholder to sell his shares, which is the case now before the court. Those provisions are as follows).

"The Corporation, on the sole authority of its Board of Directors, shall have the right at any time or from time to time at its option to purchase all or any shares of the Common Stock of the Corporation

(a) which shall have been sold, assigned or transferred without first having been offered for sale to the Corporation, as hereinabove required, unless such requirement was waived by the directors at the time as hereinabove provided, or (b) which shall not be held or owned by an employee or employees (as herein defined, whether because such holder was not originally an employee or because he had ceased voluntarily or involuntarily to be an employee), upon and by the payment to the holders of said shares, or upon and by setting aside for the benefit of such holders, as hereinafter provided, in respect of each share purchased, a price equal to the asset value, exclusive of good will and going concern value, (as of a date not more than thirty (30) days prior to such purchase) of such shares of Common Stock, as found in good faith by or in the manner prescribed by the Board of Directors of the Corporation; provided, however, that nothing hereinabove contained in subdivision (b) of this paragraph shall give the Corporation the right or option to purchase from holders who are not employees of the Corporation (1) any shares of Common Stock issued upon conversion, pursuant to clause (8) of this Article Fourth, of Preferred Stock of the Corporation, or (2), prior to January 1, 1934, at a price of less than fifty dollars ($50) per share, any of the first 30,000 shares of Common Stock issued by the Corporation, and certificates for such shares shall be appropriately marked so as to distinguish them; and provided, further, that anything in this clause (11) to the contrary notwithstanding, any director, officer or employee of the Corporation may, with the consent of its Board of Directors or Executive Committee and upon such conditions as they may specify, transfer and assign all or any of the shares of Common Stock standing in his name to, or cause all or any of the shares of Common Stock subscribed for by him to be issued in the name of, any person, firm or corporation of his selection, or to be pledged with any person, firm or corporation with the right in the pledgee to sell same (but only after said pledgee has first given the Corporation an opportunity to purchase the shares so pledged as provided in the next preceding paragraph hereof), without thereby, or by sale (made as aforesaid) pursuant to any such pledge, rendering such shares liable to be purchased by the Corporation pursuant to the provisions of this clause (11), except as provided for in the conditions set forth in such consent. If and when the Board of Directors shall elect to purchase any such shares notice of intention of the Corporation to purchase such shares, specifying the number of shares to be purchased, the number or numbers of the certificate or certificates representing said shares and the date of purchase, shall be mailed to the holder of record on the books of the Corporation of the shares to be purchased not less than twenty (20) days before the purchase date fixed in the notice. If notice shall be given as aforesaid and any holder of shares called for purchase shall not present his shares for purchase on or before the date specified in the notice, the Corporation shall immediately after the date specified in the notice set apart the funds necessary to effect the purchase of such shares and thereupon such shares shall be deemed purchased, and shall not thereafter entitle the holder to any dividend, voting or other rights of a stockholder, or to any right except to receive the purchase price (without interest) upon surrender of the certificate or certificates representing such shares. The moneys so set apart for

the purchase of any shares, shall be paid to the proper owners of such shares upon surrender to the Corporation of the certificate or certificates representing such shares properly endorsed and in proper form for transfer. If the certificate or certificates representing the shares so purchased also represent other shares not purchased, a new certifiicate shall be issued for such other shares. The purchase of any shares pursuant to the provisions hereof shall not be deemed to reduce the authorized number of shares of stock of the Corporation."

On February 14, 1938, the board of directors adopted a resolution reciting that the complainant was the holder of eight hundred shares of the common stock, that he was at one time an employee of the corporation but had ceased to be such and resolving that the corporation should purchase his shares in exercise of its rights so to do under the above quoted provisions of its certificate of incorporation. The resolution further adjourned the meeting to March 3, 1938, and resolved that on that date the board "shall find, in good faith, the asset value of the said eight hundred shares of Common Stock, exclusive of good will and going concern value, or shall prescribe the manner in which said asset value shall be found, and shall also fix the purchase date to be fixed in the notice to be given to the said" complainant in accordance with the provisions of the clause of the charter above quoted.

On March 2, 1938, the complainant filed the pending bill in which he seeks by injunctive relief to restrain the corporation from proceeding further in carrying out its declared purpose.

The defendant has demurred to the bill.

In the case of *Lawson v. Houshold Finance Corp.*, 17 *Del. Ch.* 343, 152 *A.* 723, *affirming* 17 *Del. Ch.* 1, 147 *A.* 312, there was involved a clause in a corporate charter which required any holder of the corporation's class B stock who desired to sell the same to give the corporation the first right to buy it, and which provided for notice by the stockholder to the corporation of his desire to sell, certain procedure to be followed, that appraisers be appointed, one

by the stockholder, one by the corporation, and a third by the first two or by some court of general jurisdiction, and for the ascertainment by the appraisers of the price to be paid which was to be the value of the shares exclusive of good will as an asset item.

The clause was assailed as being arbitrary and unreasonable in its restraint upon the stockholder's right of alienation, as being without statutory authority for its incorporation in the charter, and as not having any legitimate connection with proper corporate ends.

But the Supreme Court in review and this court in the first instance, rejected all those contentions. The power of the corporation, which was questioned, was held to have its origin in the statutory grant to the corporation of the right to purchase and acquire its own stock. In the *Household Finance Corporation Case* there was no claim that the corporation lacked a surplus available for the purchase. In the instant case it is admitted by formal stipulation that the corporation has surplus funds available for the proposed purchase. On the authority, then, of *Lawson v. Household Finance Corp., supra,* we must accept as settled the proposition that a corporation has the statutory power to provide in its certificate of incorporation for the purchase and acquisition of its own stock from its own stockholders. The cited case further holds that when this fundamental postulate is established the terms of the contract of purchase are to be ascertained from the charter provisions. This was in answer to the contention that it was unfair to eliminate good will as an asset item in appraising the per share value of the stock.

In cases of the type illustrated by *Lawson v. Household Finance Corp., supra,* and by the one *sub judice,* the contract between the corporation and the stockholder is evidenced by the terms of the charter, and its obligations arise upon the instant of the issuance by the corporation of the

stock and the acceptance thereof by the stockholder. It is with the seller's, the issuing corporation's side of the contract, that we are particularly concerned, and the question is whether the selling corporation may lawfully impose the specified restraints upon the purchasing stockholder's right of alienation.

The case is not fully answered by showing that the charter's terms in which the contract is embodied has the status of a contract with a statutory source of authorization. Individuals have authority in law to enter into all sorts of contracts. But this general power to make contracts does not of course mean that every term in a contract which individuals may choose to adopt, shall in every instance be recognized as valid and binding. No individual may exercise his broad power to enter into contract relations with another so as to offend against what the law deems to be sound public policy. When the *General Corporation Law* of this State, *Rev. Code* 1935, § 2051, gave to a corporation created thereunder the power to enter into contracts for the purchase of its own stock, its gift was of no greater amplitude than that which is possessed by individual persons in their natural capacities.

Accordingly in *Lawson v. Household Finance Corp., supra,* the court after ascertaining the existence of the alleged contract and its terms from the charter in light of the statute, proceeded to consider whether the so-called parties thereto, viz., the corporation and the stockholders, had exercised the right of contract to a forbidden length. Particularly, the inquiry was whether the so-called contract was violative of that public policy which forbids unreasonable restraints upon alienation.

In *Lawson v. Household Finance Corp., supra,* it was held that the provision in the charter which required a stockholder desirous of selling his stock to offer it first to the corporation, though in partial restraint of the stock-

holder's right of alienation, was not in unreasonable restraint thereof. This holding was made in view of the particular nature of the corporation's business and the special contribution to the success thereof which was calculated to ensue from the identity of management and stockholder personnel. The answer in that case, which was taken to be true, clearly averred the facts on which that conclusion was based and so the restraint on alienation which the charter imposed was held not to be unreasonable.

The instant case, however, is distinguishable from *Lawson v. Household Finance Corp., supra,* in two important respects.

In the first place there is nothing in the bill to which we here look for the facts, to show any reason at all comparable to that appearing in the case of *Lawson v. Household Finance Corporation* for saying that the restraint is reasonably necessary to advance the corporation's welfare and promote business success. The only statement of reason is found in the first sentence of paragraph eleven of Article Fourth quoted in the statement at the outset of this opinion—viz., the imposed restraint is "in order to insure the harmonious conduct of the business and to prevent the introduction of any Common Stockholders for any reason deemed unsuitable." Such are the recited reasons. They amount to no more than this—that the corporation ought at all times to have a body of stockholders among whom there should never be any whom the directors find not agreeable, for it is to be remembered that it is the directors whose judgment is final in passing on the suitability of the stockholder. In *Starring v. American Hair & Felt Co.,* 21 *Del. Ch.* 380, 191 *A.* 887, affirmed in a *per curiam* opinion 21 *Del. Ch.* 431, 2 *A.* 2d 249, it was strongly intimated that the exercise of the statutory power to redeem stock if it existed, was highly questionable if its avowed purpose was to get rid of certain stockholders of a given class solely because their presence in the stock-

holding group was undesirable to the rest. I am of the opinion that the strong intimation expressed in that case is acceptable as a governing rule. A process of expulsion from stockholding membership and the correlative process of selection of favored substitutes is equally offensive to individual rights, when it is attempted to be effectuated in the guise of a lawful power to enter into stock issuance contracts, as here, as when it is attempted to be effectuated in the guise of a lawful power to redeem stock. Of course, if special circumstances exist such as appeared in *Lawson v. Household Finance Corp., supra,* the scheme might find justification in the reasonable needs and welfare of the corporation.

No such special circumstances appear, however, in the instant case. Indeed that the scheme of paragraph eleven of Article Fourth of the charter, in that part thereof which provides for the compulsory sale by common stockholders of their stock to the corporation, has no relation to the plan of identifying personnel of management and employees with ownership, as in *Lawson v. Household Finance Corp., supra,* would seem to be evident from the fact that holders of common stock received through conversion of any of the outstanding 15,988 shares of $7.00 Cumulative Convertible Preferred Stock, are expressly exempted from the compulsory sale provisions.

The second respect in which the instant case is distinguishable from *Lawson v. Household Finance Corp., supra,* consists in this, that the court was concerned in that case with a clause in the charter different in nature from the one here involved. In that case the challenged clause was one that required the stockholders to give the corporation the first opportunity to buy in case the stockholder desired to sell. There is such a clause in the charter in this case. But it is not with that clause that the case is concerned. It is against the other clause in the charter that the bill is directed—the one which undertakes to com-

pel the stockholder to sell his stock to the corporation whenever the directors see fit to require him to do so. As before stated, this compulsion is not visitable upon those common stockholders who become such in exercise of their preferred stock conversion rights.

If it be a partial restraint upon alienation to require the owner of stock before aliening the same to make a first offer of it to the corporation, an assumption which necessarily underlies the two opinions in *Lawson v. Household Finance Corp.*, *supra*, *a fortiori* is it such a restraint if in addition to such requirement, it is further stipulated that the stockholder must on the demand of the corporation sell to it. Such a restriction is even the more severe in its narrowing of the field of possible alienees when it is remembered that in the case of a stockholder desiring to sell and who is at liberty to sell to an outsider because of the corporation's refusal to exercise its right of first choice, as may be possible under this charter, the purchaser from such willing seller must take the stock subject always to the right of the corporation at any time to demand a sale and transfer thereof to it at a price fixed by the rigid valuation formula. Common stock, except shares held in the favored group of converting preferred stockholders, are forever held in the grip of this exacting obligation, no matter how numerous the intervening alienees may be.

In *Barnard's Lessee, et al., v. Bailey, et al.*, 2 Har. 56, it was held to be a void restriction upon a devise to a widow in fee, to forbid her disposal of it to the blood kin of either the widow or the testator. This was of course because of the principle which condemns restraints upon alienation. Authorities may be found which would sustain such a restriction as was condemned in *Barnard's Lessee, et al., v. Bailey, et al.*, *supra*, as being a partial restraint not so unreasonable as to merit condemnation. I cite the case only to show the zealous regard which has been exhibited by the Superior Court in this State for preserving

the free alienability of estates. Incidentally it may be mentioned no distinction is to be drawn in this matter of unreasonable restraints upon alienation, between real estate and personalty. *Gray, Restraints on Alienation,* (1883) § 27.

In the instant case, the restraint is not against aliening to any one person or to a narrow few as in *Barnard's Lessee, et al., v. Bailey, et al., supra.* In substance it borders close upon a restraint against transferring the property to any one in the whole world except to the corporation, for such must be the effect as a practical matter of the obligation of the holder at any time to sell to the corporation upon its demand. The restraint upon the free right of sale and transfer is made quite evident when it is considered that even when the stockholder is free to sell to others than the corporation, any possible purchaser who might be disposed to buy the stock would immediately observe its liability to be bought in by the corporation at any time in the indefinite future in the exercise of its own uncontrolled discretion; and this consideration when conjoined with the further one, that he would have to take a price measured by the value of the assets at the moment, exclusive of good will and going concern value, as the same was found in good faith by the directors, would doubtless serve to prompt any sensible man to decline to make the purchase. Asset values fluctuate from day to day, not to say from year to year. By discreet selection of the times to buy, the directors would have the stockholders at their mercy, and by the same token no stockholder would ever be reasonably sure of his investment. To be sure the stockholder could force the corporation to say whether or not it would buy his stock at a given time, and thus seek a time to sell when the asset condition was favorable. But the same favorable asset condition which prompted the holder to sell, would doubtless prompt the corporation to refuse to buy. In that case, the holder could sell his stock

to anyone else. But who would want to buy it except at a gambler's odds? Any possible purchaser would take it burdened with an obligation to transfer it any time to the corporation at a future asset value which might be far below what he paid for it.

In its substantial aspects, therefore, the clause requiring compulsory sale to the corporation appears, to all intents and purposes, as one that as a matter of practical operation can have no effect other than that of excluding all persons but one, the corporation, from the field of possible buyers.

The clause which assumes to compel the complainant to sell is, therefore, far more severe in its restraint upon alienation than was the clause with which *Lawson v. Household Finance Corp., supra,* was concerned. Had it not been for the special circumstances involved in that case, we must infer that even the milder clause there involved would have been declared to constitute an unlawful restraint upon alienation. As no such special circumstances are disclosed here, it must follow that the clause in question which is much more severe and exacting in its restraint than the milder one before the courts in the *Household Finance Corporation Case* must be regarded as unreasonable and therefore not lawful.

Whether the defendant after answer and full hearing can show the character of its business to be such, and the ends and purposes of the restraint complained against so related to the corporation's successful operation, as to warrant the conclusion that the restraint is reasonable, I of course do not pretend to say. On the facts as they appear from the bill, I am unable to discover any basis on which to rest the view that the imposed restraint is reasonable and therefore not violative of an oft declared public policy.

The demurrer will be overruled.