EUGENE A. TRACEY,
Plaintiff Below, Appellant,

*vs.*

CURTIS FRANKLIN and BRITISH TYPE INVESTORS, INC., a
corporation of the State of Delaware,

Defendants Below, Appellees.

*Supreme Court, on Appeal, May 23, 1949.*

478

RICHARDS, C. J., TERRY, CAREY, PEARSON and LAYTON, JJ., sitting.

*Arthur G. Logan,* of the firm of Logan, Duffy & Boggs, (*Robert V. Huber,* of the firm of Logan, Duffy & Boggs, and *Sïdney G. Kingsley,* of New York), for plaintiff.

*Clarence A. Southerland* and *David F. Anderson,* of the firm of Southerland, Berl & Potter, for defendants.

LAYTON, Judge, delivering the opinion of the court:

The precise question presented here is whether a voting trust agreement is contrary to public policy, and therefore invalid, because the trust certificates representing the beneficial interest of the owners of the stock deposited are, by the express terms of the agreement, made inalienable and nonassignable. Public policy is a very vague and nebulous term and the decisions under this branch of the law are in such confusion as to have once provoked the remark

that "Public policy is a very unruly horse and when once you get astride it you never know where it will carry you".[1] An important incident of the ownership of property is its transferability and the proposition is frequently stated in the texts that a general restraint upon alienation is invalid because contrary to public policy. 42 *Am. Jur., Sec.* 325, *p.* 229; *Christy, the Transfer of Stock, Sec.* 37, *page* 72; *Fletcher, Cyclo. Corporations, Sec.* 5455, *p.* 219. This is because of the evils inherent in fettering the free right of transfer and in the removal of property generally from the free flow of commerce and trade. It is also well settled that, while the rule against alienation has its origin in the law of real property, it has been extended to include personal property. *Greene v. E. H. Rollins & Sons Co.,* 22 *Del. Ch.* 394, 2 *A.* 2*d* 249. An examination of the decisions, however, discloses that, as to personal property, and particularly corporate stock, the rule is subject to frequent exceptions.

Thus, there are numerous cases where restrictions in corporate charters imposing restraints upon the right of stockholders freely to sell their stock, have been sustained. Illustrative of these is *Lawson v. Household Finance Corp.,* 17 *Del. Ch.* 343, 152 *A.* 723. In that case a provision in the corporate charter required owners of stock, before selling to outsiders, first to offer it to the corporation for a fixed period of time. If after appraisal by a stated formula, the corporation did not exercise its option, then the stockholder was free to sell elsewhere. The basis for the restriction was the fact that the corporation was engaged in making small, unsecured loans which required its employees (the owners of the stock involved in the controversy) to be persons of skill and judgment. For this reason it was desirable to have its employees become a part of the venture through stock ownership. In affirming the Chancellor, this court held that the restriction upon the sale was not un-

---

[1] Burroughs, J., in *Richardson v. Mellish*, 2 *Bing.* 229; Referred to in *Williston on Contracts, Volume 5, Section* 1629.

reasonable in the light of the objects and purposes sought to be accomplished. In this connection see also *New England Trust Co. v. Abbott,* 162 *Mass.* 148, 38 *N.E.* 432, 27 *L.R.A.* 271; *Nicholson v. Franklin Brewing Co.,* 82 *Ohio St.* 94, 91 *N.E.* 991, 137 *Am. St. Rep.* 764, 19 *Ann. Cas.* 699; *Baumohl v. Goldstein,* 95 *N.J. Eq.* 597, 124 *A.* 118; *Casper v. Kalt-Zimmers Mfg. Co.,* 159 *Wis.* 517, 149 *N.W.* 754, 150 *N.W.* 1101; *Sweetland v. Quidnick Co.,* 11 *R.I.* 328; *Garrett v. Philadelphia Lawn Mower Co.,* 39 *Pa. Super.* 78; *Searles v. Bar Harbor Trust Co.,* 128 *Me.* 34, 145 *A.* 391, 65 *A.L.R.* 1154; and *Moffat v. Farquahar,* 7 *Ch. Div.* 591.

Concededly many older decisions are contrary. See cases collected under footnote I, *Vol.* 3, *Cook on Corporations, Sec.* 622 D, *page* 2212. And the late Chancellor Wolcott in *Greene v. E. H. Rollins & Sons Co.,* 22 *Del. Ch.* 394, 2 *A.* 2d 249, 253, struck down a provision in a corporate charter requiring any holder of its stock, upon demand, to surrender it to the corporation at its appraised value. The Chancellor took occasion to state that:

"* * * it (the restraint) borders close upon a restraint against transferring the property to any one in the whole world except to the corporation * * *."

It is important to notice, however, that the Chancellor further said:

"Whether the defendant after answer and full hearing can show the character of its business to be such, and the ends and purposes of the restraint complained against so related to the corporation's successful operation, as to warrant the conclusion that the restraint is reasonable, I of course do not pretend to say. On the facts as they appear from the bill, I am unable to discover any basis * * * that the imposed restraint is reasonable* * *."

And there is yet another group of cases where rather severe restraints against the sale of corporate stock for periods of limited duration were upheld for reasons found to be peculiarly persuasive.

In *Williams v. Montgomery*, 148 *N.Y.* 519, 43 *N.E.* 57 (Court of Appeals)[2] four persons owning over 99% of the stock of a corporation agreed to place their stock in a bank not to be sold until a certain proportion of the corporation's treasury stock had been disposed of. In no event, was the limitation upon the sale of the stock of the parties to extend beyond a period of six months. The court stated that the purpose of the contract was inherently reasonable in that it was an agreement between all the stockholders for their own personal benefit, the purpose being to prevent the market from being suddenly glutted by the sale of too many shares of stock. It was observed that in agreeing that a portion of the treasury stock should first be disposed of, the stockholders would benefit the corporation, and therefore, indirectly their own interest in the treasury shares, and at the same time preserve the value of the shares owned by the individual parties. The court stated that it was unable to find anything in the agreement so offensive to public policy as to render the agreement void. The case is also important because it very sharply modified the decision of the court below holding the agreement invalid. *Williams v. Montgomery*, 68 *Hun* 416, 22 *N.Y.S.* 1033, and also *Fisher v. Bush*, 35 *Hun* 641, both of which cases are relied upon in defendant's brief.

In *Cook Railway Signal Co. v. Buck*, 59 *Colo.* 368, 149 *P.* 95, all the stockholders of the corporation agreed that they would not sell their individual shares as long as a contract with a third party for the sale of treasury stock was in force, a substantial period of time. This contract was upheld as not violative of public policy upon the grounds of mutual consideration and benefit to the stockholders as well as the corporation.

---

[2] By statute in New York it was provided that "the power of alienation is suspended, when there are no persons in being, by whom an absolute fee in possession can be conveyed." 1 *R.S.* 1829, *pt.* 2, *c.* 1, *tit.* 2, § 14.

Similarly, in *Penthouse Properties, Inc. v.* 1158 *Fifth Avenue,* 256 *App. Div.* 685, 11 *N.Y.S.* 2d 417, it was held that a provision in a plan for reorganization of a corporation which owned and operated a co-operative apartment to the effect that the tenant-owner could not assign his lease or stock without the written consent of the directors or two-thirds of the stockholders was a reasonable restraint upon the alienation of property. Here the court was persuaded that the primary object of the provision was reasonable because of the peculiar incidents of co-operative ownership.

From the authorities here discussed and many others examined certain basic principles may be deduced which serve as some guide in determining the question at hand. Insofar as concerns restraints upon the alienation of personal property, and in particular of corporate stock, while an owner, in exercising legally permissible freedom to deal with his property, may enter into many transactions which have the effect of restraining its transferability for temporary periods in the future,[3] nevertheless, arbitrary restraints on alienation are forbidden and unless restraints are imposed for purposes recognized as sufficient, they will be held invalid. The public policy against restraints may be relaxed where the circumstances of a particular case convince the court that it is a reasonable means of accomplishing a purpose recognized as proper. But, where owners of property attempt mutually to restrain the alienation of their property for a substantial period as here, some purpose must appear, other than an unexplained desire to make it inalienable, in order that the restraint be enforceable. A restraint merely to prevent certain persons from acquiring particular property is invalid unless there appears some reasonable relationship between the prevention of transfer to such persons and the accomplishment of

[3] For instance, trusts involving gifts, pledges, cross options and leases for a period of years with an option in the lessee to purchase at the expiration of the term.

some legitimate purpose. Compare *Lawson v. Household Finance Corporation,* 17 *Del. Ch.* 1, 147 *A.* 312.

Here, we have no other indication of the objects sought to be accomplished than statements in the agreement itself. What appear from the recitals to be dominant purposes are "to unite and act together" for a period of time concerning the voting and other powers and rights held by the parties as stockholders; to place these in the hands of trustees; to vote the deposited stock as a unit; and to prevent the acquisition of control of the stock by other interests.

*Section* 18 of the *Corporation Law, Rev. Code* 1935, § 2050, authorizes a means for accomplishing such results to this extent; it authorizes "voting trusts" by which shareholders may vest the power to vote their shares in voting trustees for a period; and as a necessary incident of such a voting trust, restraints upon the alienation of the *stock itself* are permitted for the period of the trust. But the statute does not go further to authorize expressly restraints on the alienation of the beneficial interests remaining in the shareholders, and such restraints are not necessary incidents of a voting trust. The parties have sought to accomplish their stated purposes by the means permitted by the statute, and by additional means which seem to us not reasonably contemplated by the statutory provisions.

*ﬂ* The statute provides that a voting trust agreement "may contain any other lawful provisions not inconsistent with said purpose" (vesting voting power in voting trustees). But this leaves it to be determined whether particular provisions called in question are, or are not, lawful. *ﬂ*

In the recitals, the parties state that they wish "to secure competent and able management for said company and to put certain and wholesome and beneficial policies for said company into effect." This statement, without more, is too general to be treated as a specification of a particular purpose for the restraints on alienation of the beneficial

interests. Indeed, the relation between the accomplishment of these general objects, and restraints on alienation of the beneficial interests, is not apparent to us.

The agreement is a private contract between two shareholders only. From all that is before us, we find no specification of any particular purpose, so far as the restraints in question are concerned, to benefit the corporation, or other stockholders of the same class, or to do otherwise than to solidify ownership in the parties themselves. The facts do not disclose legally sufficient purposes to justify the restraints on alienation. Therefore, we hold the restraints invalid.

Two additional arguments are urged upon us in support of the validity of the challenged restraints. Neither requires extended discussion.

Appellant urges that the restraints are made valid by the presence of the provisions that in case of the death of either party to the agreement, the survivor shall have the option to purchase the interest of the deceased, within a year after his death. No doubt, restraints on alienation to support an option are in many circumstances valid. Here, however, the option is wholly incidental and subordinate to the restraint on alienation. The restraint is designed to be operative in all events during the trust period, and the option only in the event of the death of a party. We do not think such an "incidental" option is alone sufficient to justify the restraints.

It is further argued that *Section* 4415 of the *Revised Code,* the "spendthrift trust" statute, authorizes the restraints on alienation of these beneficial interests. True enough, that statute does not describe any special kinds of express trusts to which it is applicable, nor in terms exclude from its application any particular kind of express trust. However, the history of such provisions in other jurisdictions, and the application of the statute thus far in Delaware of which we are aware, lead us to conclude

that they are designed for trusts in which a gift is involved. The considerations affecting such trusts seem quite different from those where, by voluntary agreement, an owner would deprive himself of the important incident of transferability of his property. Appellant's argument in this respect is likewise unacceptable.

Despite the declared invalidity of the provisions of the voting trust agreement imposing restraints upon the alienability of the certificates of the parties, complainant maintains that it is severable in character and may still be enforced. Whether or not the terms of a contract are severable is purely a question of the intent of the parties. *Equitable Trust Co. v. Delaware Trust Co.*, 30 *Del. Ch.* 118, 54 *A.* 2d 733. Here the acid test is whether or not the parties would have entered into the voting trust agreement at all faced with the knowledge that paragraph (5), which attempted to impose the restraint upon the alienability of the certificates, was invalid. The question is the more troublesome because, no extraneous evidence having been offered on the point, the intention must be deduced from the bare terms of the instrument alone.

Notwithstanding that in connection with voting trusts compliance with requirements of *Section* 18 is insisted upon with some rigor. *Perry v. Missouri-Kansas Pipe Line Co.*, 22 *Del. Ch.* 33, 191 *A.* 823, we expressly disaffirm the suggested proposition that any illegality in a voting trust renders the entire agreement illegal. Nevertheless, we are of the view that the invalid restraints on alienation of the beneficial interests are such an integral part of the agreement that the entire agreement should be held unenforceable. We think the following reasoning of the Vice Chancellor is especially apt and we adopt it in this connection [30 *Del. Ch.* 407, 61 *A.* 2d 785]:

"The voting trust here is essentially a personal agreement between two stockholders who for reasons expressed in the recitals desired to vote their stock jointly.

\* \* \*

"It is evident to me that the parties intended the restrictive provisions to be an important part of their agreement and they contemplated that they alone should determine what policies should be followed for the entire period of the trust. They wanted no other party to have any beneficial interest in the stock unless both agreed. The tenor of the entire agreement shows that the parties decided to bind themselves to hold their stock for the term of the voting trust unless death intervened, and they made certain that they would be in a position to effectuate their policies by naming themselves the only voting trustees. It was also a closed voting trust agreement. The possibility of the right to alienate is foreign to the objectives of the agreement generally, and I conclude from the agreement itself that the parties would not have desired to bind themselves absent the restraint provisions."

It follows that the order appealed from should be affirmed.