Jack J. GRYNBERG, Celeste C. Grynberg, Celeste C. Grynberg as sole trustee for Rachel Grynberg, Stephen Grynberg and Miriam Grynberg, Celeste C. Grynberg and Dean Smernoff as co-trustees for Rachel Grynberg, Stephen Grynberg and Miriam Grynberg and Oceanic Holding Company, a Colorado Corporation, Plaintiffs,

v.

Gene E. BURKE, Marc Waucquez, William E. Foster, Wesley N. Farmer, Melvin M. Fenichell, Thomas J. Vogenthaler, Norman J. Singer and Oceanic Exploration Company, a Delaware Corporation, Defendants.

Court of Chancery of Delaware, New Castle.

Submitted June 24, 1977.

Decided Aug. 25, 1977.

David A. Drexler of Morris, Nichols, Arsht & Tunnell, Wilmington, for plaintiffs.

Edward B. Maxwell, II, of Young, Conaway, Stargatt & Taylor, Wilmington, Steven M. Umin and Aubrey M. Daniel, III, of Williams & Connolly, Washington, D.C., for defendant Oceanic Exploration Co.

BROWN, Vice Chancellor.

Both the plaintiffs and the defendant corporation in this case have moved for summary judgment. Plaintiffs, individually and as trustees, are the owners of 76 per cent of the outstanding stock of the defendant Oceanic Exploration Company ("Oceanic"). In February 1977 plaintiffs entered into a written agreement whereby 51 per cent of their stock was placed into a voting trust which gave their voting rights in the stock to others. On June 2, 1976 this voting trust agreement was amended, again by written instrument, as a result of which all of plaintiffs' stock, totaling some 5,222,558 shares, was placed in this voting trust. The June 2 instrument also added to the voting trust agreement an option in favor of the corporation which gave it the right for a period of 5 years to purchase "all or any part" of plaintiff's stock. The purchase price under the option was fixed at $2.87 per share (or one-half of the then current market price of the stock) for the first year, with this price increasing by 10 per cent on each anniversary date thereafter for the term of the option. The agreement further provides that during the term of the option plaintiffs may not "sell, hypothecate, pledge or otherwise encumber said shares or their interests therein."

Plaintiffs have brought suit to have this voting trust and option agreement declared void so as to permit control of the corporation to be returned to them. They rely upon alleged fraud on the part of the individual defendants as well as upon a failure of consideration to support the agreement. For the purpose of their present motion, however, plaintiffs concede *arguendo* that the agreement was voluntarily and lawfully entered into and that the recited considerations were sufficient. Their sole contention at this point is that the June 2, 1976 agreement constitutes an unlawful restraint upon their right to sell and alienate their shares of Oceanic stock and that as a consequence it is void.

As presented, this issue involves an analysis of three Delaware precedents relied upon by the plaintiffs when compared with the present § 202 of the Delaware General Corporation Law as adopted in 1967 subsequent to those decisions.

Plaintiffs' fundamental premise is that any unreasonable restraint upon a stockholder's right to sell or benefit from his corporate stock is void. 12 *Fletcher, Cyclopedia of Corporations* (Perm.Ed.) § 5461.-3; 2 *O'Neal, Close Corporations* § 7.06; Annotation, "Validity of Restrictions on Transfer of Corporate Stock," 61 *A.L.R.2d* 1318. Accordingly, they suggest that the only issue to be determined here is whether the restraint imposed by the June 2 agreement is unreasonable. They say that this is clearly established when the terms of the agreement are considered in light of Oceanic's contemporaneous financial situation.

In *Lawson v. Household Finance Corp.,* Del.Supr., 147 A. 312, 17 Del.Ch. 1 (1930) corporate charter and by-law provisions were upheld which required all stockholders to first offer their stock to the corporation based on a formula for determining the current value, exclusive of good will, before they could be free to sell it to others. While recognizing that this did constitute a restraint upon alienation, it was reasoned, first, that it did not take away entirely the stockholder's right to sell and dispose of his property and, second, that in view of the particular nature of the corporation's business, the restriction that the stock first be offered to the corporation under a price-fixing procedure of which the stockholder had notice when he acquired it, was not unreasonable.

In *Greene v. E. H. Rollins & Son, Inc.,* 22 Del.Ch. 394, 2 A.2d 249 (1938) the certificate of incorporation contained provisions which, briefly summarized, gave the corporation the right to repurchase certain stock from its shareholders at an established price formula at any time it saw fit. A stockholder there brought suit to enjoin the corporation

from attempting to compel the sale of his stock to the corporation under this plan. In denying the demurrer of the corporation, the court distinguished the case from *Lawson* by pointing out that the restraint, because it would also apply to any transferee of a shareholder with regard to the ultimate price the corporation would have to pay regardless of the true value of the stock, effectively prohibited the free transferability of the stock at any time. Moreover, the court was not impressed with the only justification then offered in support of the restraint, namely, that in the interest of corporate harmony, the corporation should at all times have a body of stockholders agreeable to the directors. It was concluded that there was nothing of record to show that the restraint was "reasonably necessary to advance the corporation's welfare and promote business success" as in *Lawson*. 2 A.2d 252.

Finally, in *Tracey v. Franklin*, Del.Supr., 31 Del.Ch. 477, 67 A.2d 56 (1949) a decision of this Court was affirmed which had struck down a voting trust agreement between two shareholders in which it was provided, in addition to other matters, that the stockholders' interest in the voting trust itself could not be transferred for the ten-year period of the voting trust. This restraint was held to be invalid because it bore no reasonable relationship to the purpose of the voting trust, i. e., to insure voting control by the trustees over a particular class of stock.

From these cases plaintiffs reason that in order for a restraint upon alienation of corporate stock to be upheld it must appear that it is reasonably necessary to some corporate purpose and that, pursuant to *Greene v. E. H. Rollins & Son, Inc., supra*, to impose such a restraint solely to remove or control stockholders deemed undesirable by management is not a justifiable corporate purpose. Since the obvious intent of the voting trust and option here was to remove plaintiffs, as majority stockholders, from any connection with corporate affairs for a period of five years and to give the corporation that period of time to exercise the option so as to remove them altogether, plaintiffs conclude that the agreement is void on its face.

In addition, plaintiffs point out that at the time of the agreement the corporation had no surplus which, under 8 *Del.C.* § 160, would have legally enabled it to acquire plaintiffs stock at the option price. Moreover, plaintiffs point to the fact that on March 31, 1977 Oceanic's reported surplus was $394,297, but that to fully exercise the option on June 2, 1977, and within the twelve-month period thereafter, a surplus of $16,487,615 would be required.

Thus plaintiffs contend that both at the time of the June 2, 1976 agreement and now the corporation well knew that it could not exercise the option which, along with the voting trust provisions, completely divests the plaintiffs of the ability to vote their stock, to sell it, or to even borrow against it.

From this plaintiffs reason that the present management of the corporation has inveigled itself into a "can't lose" position. The primary business of Oceanic is oil exploration. If, during the period of the option restraint, management should run the corporation into the ground or enjoy only modest success, its members can walk away in 1981 leaving plaintiffs with only what is left of their collective asset. Should Oceanic be successful, or "strike oil" so to speak, then its stock will undoubtedly become worth more than the fixed option price at which the corporation may then buy it from plaintiffs through the exercise of the option.

In summary, plaintiffs urge that under the *Greene* decision, as well as under *Tracey v. Franklin*, it is established as the common law of this State that a restriction upon the alienability of corporate stock or the ownership interests therein is void if it is designed to manipulate and control the identity of shareholders for a purpose which is unnecessary or unrelated to the interests of the corporation itself. They say that such an improper purpose is glaringly evident here since the option provision of the voting trust agreement which imposes the

restraint is illusory because of the fact that Oceanic lacks the necessary surplus to exercise the option and has no reasonably foreseeable prospect of amassing it within the period of the option.

In opposition to this argument, the corporation takes the position that the *Lawson-Greene-Tracey* trilogy no longer provides the only standard for measuring the validity of restrictions on the transferability of corporate stock. Specifically, they refer to 8 *Del.C.* § 202 which, accordingly to one recognized authority, "goes far beyond any other American statute" in validating a wide variety of stock transfer restrictions. Folk, *The Delaware General Corporation Law,* p. 197. In so doing, the corporation relies on subsection (c) and subsection (e) of the statute. These provisions read as follows:

"(c) A restriction on the transfer of securities of a corporation is permitted by this section if it:

"(1) Obligates the holder of the restricted securities to offer to the corporation or to any other holders of securities of the corporation or to any other person or to any combination of the foregoing, a prior opportunity, to be exercised within a reasonable time, to acquire the restricted securities; or

"(2) Obligates the corporation or any holder of securities of the corporation or any other person or any combination of the foregoing, to purchase the securities which are the subject of an agreement respecting the purchase and sale of the restricted securities; or

"(3) *Requires the corporation* or the holders of any class of securities of the corporation *to consent to any proposed transfer of the restricted securities or to approve the proposed transferee of the restricted securities* ; or

"(4) Prohibits the transfer of the restricted securities to designated persons or classes of persons, and such designation is not manifestly unreasonable.

\* \* \* \* \* \*

"(e) Any other lawful restriction on transfer or registration of transfer of securities is permitted by this section." (Emphasis added.)

Oceanic suggests that subsection (c) sets forth four separate categories of restrictions which can be said to be *per se* valid. From this it is reasoned that since § 202(c)(3) expressly validates any restraint which would require the consent of the corporation before a shareholder could transfer his stock to anyone, then a *fortiori,* a lesser restraint such as the one in issue here, which in effect prevents only certain shareholders for a five-year period from transferring their stock without the corporation's consent so as to give the corporation an opportunity to exercise its option to purchase, must also be valid under the statute. At the very least, being a lesser restriction than those specifically authorized by § 202(c), Oceanic argues that the limitation here must be a "lawful restriction" within the meaning of § 202(e).

Having considered the logic of this theory, I do not find it to be dispositive of the matter. Quite simply, plaintiffs attack is directed to the reasonableness of the restraint imposed by the voting trust and option agreement. To accept Oceanic's argument that the statute ends the matter since it authorizes this type of restriction would mean, if logically extended, that all restrictions which allow a corporation to control the transferability of its stock and the identity of the transferees are valid, regardless of the reason which motivates them. I do not feel that the statute should be so construed, nor do I feel that its drafters intended it so to be.\*

■ Consequently, I think it more logical to conclude that the express authorization of § 202(c)(3) which permits a restriction

---

\* Compare § 202(c)(1) which authorizes a right of first refusal provided it be "exercised within a reasonable time; " § 202(c)(4) which limits prohibition on transfers to designated persons to those "not manifestly unreasonable; " and § 202(d) which states that a restriction for Subchapter S purposes is presumed to be "for a reasonable purpose." See also Folk, *The Delaware General Corporation Law,* p. 199.

giving a corporation the right to first approve a transfer of its stock is no more than a modern codification of the principle adopted in *Lawson v. Household Finance Corp.*, namely, that a restraint on the free transferability of corporate stock which gives the corporation itself a prior right to pass on the right of shareholder to transfer it to another is permissible under our law provided it bears some reasonably necessary relation to the best interests of the corporation. § 202(e) merely backs up the provisions of § 202(c) by stating that any form of restriction other than those enumerated in subsection (c) is also permissible provided it meets the same test. If anything, it may be that § 202(c) places the burden of demonstrating the unreasonableness of such enumerated restrictions on the party attacking them.

This latter observation has some significance here. Plaintiffs base their present motion on only two factors of record: the June 2 agreement and the March 31, 1977 financial statement showing that on that date Oceanic had nowhere near the surplus required under 8 *Del.C.* § 160 to exercise the option in full. Plaintiffs say that this is sufficient to require the corporation to come forward with evidence in opposition to their summary judgment motion to demonstrate the reasonableness of an agreement which deprives majority shareholders of all economic benefit of their stock for a period of five years, and that since it has failed to do so, judgment must be entered voiding the entire agreement. I cannot agree with this either.

In both *Lawson* and *Tracey* the court had the benefit of the factors on which the restraints were supposedly justified, and decided the matters accordingly. In *Greene*, most heavily relied upon by plaintiffs, the court held on the record before it that no acceptable corporate purpose had been shown to support a restriction which gave the corporation a perpetual option to buy back a shareholder's stock any time it saw fit without regard to its actual value. This ruling, however, only denied a demurrer of the corporation to the complaint. Because of this procedural aspect, the corporation

was expressly left with the opportunity to establish a proper justification at trial.

By employing the summary judgment technique here plaintiffs have attempted to force the defendants' hand by compelling them to come forward with evidence in support of the reasonableness of the option terms. By analogy to *Greene*, however, Oceanic is forced to this position only if the evidence of record indicates no reasonable corporate purpose for the challenged restraint, or, in other words, if the June 2 agreement appears to be invalid on its face in view of the March 31, 1977 financial status of the corporation. That this has not been unequivocally established on the present record is evidenced by two things.

■ First, the agreement gives the corporation the option for five years to purchase "all or any part" of plaintiffs' total shareholdings. Thus the fact that on March 31, 1977 it was not in a position to purchase "all" the shares is not determinative. As Oceanic points out, it had sufficient surplus on that date to purchase more than 100,000 shares at the option price when measured strictly by the § 160 standard on which plaintiffs rely. Thus the mere fact that Oceanic may lack the present ability to purchase all the shares does not render the agreement illusory, and this latter supposition is heavily relied upon by plaintiffs to support their contention that the restraint imposed by the option has no corporate purpose and is therefore unreasonable. Reasons may exist which would make a repurchase of only a portion of plaintiffs' holdings beneficial to the corporation.

■ Second, the allegations of the complaint upon which the charge of fraud is premised assert that plaintiffs were lured into the agreement on the strength of representations that in order to obtain the vitally-needed funds from another source and to forestall potential insolvency of the corporation, it was being insisted upon by this third party that plaintiffs be removed from all active control in Oceanic as a condition. Plaintiffs allege that this represen-

tation was untrue. Whether it was or not remains undetermined. But since it is conceded to be true for the purpose of this motion, it presents some possible explanation for the birth of the agreement in its challenged form.

In short, the record is not completely barren of factors which could contradict the plaintiffs' interpretation that the agreement itself fails to reveal any justifiable basis for the immobilizing restraint on their stockholding interests. Admittedly, if the need was to remove only the plaintiffs from active participation in the corporate enterprise in order to save it, it seems strange that, in addition to the voting trust provisions, it would be necessary to prohibit plaintiffs from disposing of their stock to anyone other than the corporation itself. However, all factors considered, I cannot conclude as a matter of law on the present record that the plaintiffs are entitled to summary judgment voiding the June 2 agreement.

Since the rejection of Oceanic's argument as to the effect of 8 *Del.C.* § 202 necessarily rejects its basis for seeking summary judgment, it follows that the motions of both parties must be denied. Counsel are asked to submit an appropriate form of order.