EUGENE A. TRACEY,

*vs.*

CURTIS FRANKLIN and BRITISH TYPE INVESTORS, INC., a corporation of the State of Delaware.

*New Castle, November 3, 1948.*

*Arthur G. Logan* and *Robert V. Huber,* of the firm of Logan, Duffy & Boggs, and *Sidney G. Kingsley,* of New York City, for plaintiff.

*Clarence A. Southerland* and *David F. Anderson,* of the firm of Southerland, Berl & Potter, for defendants.

SEITZ, Vice-Chancellor: Essentially this decision involves the validity of certain provisions of a voting trust agreement restricting the alienability of the voting trust certificates and the interests represented thereby.

Plaintiff, Eugene A. Tracey, one of two voting trust certificate holders, and one of two voting trustees filed a complaint seeking certain equitable relief. Concededly, his right to relief is necessarily premised on the validity of a voting trust agreement executed by him and the defendant Curtis Franklin on June 4, 1946. The defendant Franklin, the other voting trust certificate holder and voting trustee, has moved to dismiss the complaint on two grounds:

1. The voting trust agreement is illegal and unenforceable because the voting trust certificates to be issued thereunder were made nontransferable and inalienable.

2. The voting trust agreement is unenforceable because a copy of the trust agreement was not filed in the Delaware office of the corporation as required by *Section* 18 of the *General Corporation Law, Rev. Code* 1935, § 2050.

To resolve the first ground of the motion, we must examine the terms of the voting trust agreement. Plaintiff Tracey and defendant Franklin as stockholders of British

Type Investors, Inc. (hereinafter called "B. T. I."), a Delaware corporation, entered into a voting trust agreement with themselves as voting trustees. The agreement recites that Franklin and Tracey owned a substantial portion of the Class B stock of B. T. I., and deemed it in the best interest of themselves and B. T. I. to unite and act together for a definite period of time concerning the voting and other powers and rights held by them as such stockholders and to place such rights and powers in the hands of trustees. It further recites that the parties wished to vote their stock as a unit and to prevent the acquisition and control of Class B stock by other interests and further that so far as possible, they wished to vote their stock as a unit to secure competent and able management of B. T. I., and to put into effect certain wholesome and beneficial policies for B. T. I. It further recites that the parties believed their object could best be accomplished by acting together jointly, and "by giving to the surviving stockholder, in the event one of said stockholders should die prior to the expiration of this agreement, the right or option to acquire the shares of the stockholder so dying; * * *." It is then recited that the parties believed their purpose could best be accomplished by the terms of the agreement, and the conveyance of the stock to themselves as trustees. After these recitals, the agreement then contains the rather usual provisions of a voting trust agreement, except that it is not an open end agreement.

The agreement is to continue until March 1, 1956, unless sooner terminated. Paragraphs Fifth, Sixth and Seventh of the agreement are particularly relevant to the present decision:

"Fifth: The said stockholders, and each of them, do hereby agree that during the period from and after the date hereof, to and including the first day of March, 1956, or until this agreement shall be terminated, as hereinafter provided, they will not sell nor attempt to sell their respective stock so deposited with the trustees and the said stockholders and each of them, for himself, his executors, administrators and assigns, do hereby agree that they will not assign nor sell

their respective voting trust certificates nor any of the same, nor any interest in the shares of stock represented thereby nor divest themselves of any interest in this voting trust while it shall be in full force and effect.

"Sixth: In the event of the death of one of the depositing stockholders prior to the expiration or termination of this agreement, the surviving depositing stockholders shall have the right or option to purchase the certificate of trust and all interest in said Class B stock of British Type Investors, Inc. represented thereby of said deceased stockholder from the executors, administrators, heirs or assigns of said deceased stockholder within one (1) year from and after the date of said death, at and for the price computed by taking the market value per share on the date of said death of the Class A stock of British Type Investors, Inc. and multiplying the same by the number of shares of Class B stock represented by the certificate of trust of said deceased stockholder.

"Seventh: The said trustees do hereby covenant and agree that they will not sell the stock so deposited with them, except upon the written direction of both of said stockholders, and then only at and for the price specified by said stockholders. In the event of any such sale by said trustees, the net proceeds of such sale, after deduction of transfer stamps, brokerage fees and other expenses and disbursements of said trustees, shall be retained or paid over to the holder of the certificates of trust, as directed by the said stockholders."

Under the quoted provisions, the voting trust certificates and any interest in the shares of stock represented thereby are made non-transferable and inalienable for the full period of the voting trust—almost ten years—unless one of the parties dies during such period, or unless both trustees agree to a sale. The agreement may be terminated by mutual consent. It also provides for a recital on the face of the voting trust certificates of the restrictions against transfer. Are these restrictions on the alienability of the voting trust certificates and the interests represented thereby valid under Delaware law?

In resolving the present problem, I feel that the voting trust certificates should be treated the same as ordinary stock certificates. The real equitable interest in the stock remains in the holder of the voting trust certificate. See *John W. Cooney Co. v. Arlington Hotel Co.*, 11 *Del. Ch.*

286, 101 *A.* 879.  *Section* 18 of the *General Corporation Law* authorizing voting trusts provides that "Such agreement may contain any other lawful provisions not inconsistent with said purpose." Having in mind that the primary purpose behind the passage of the statute legalizing voting trusts was to authorize the separation of voting rights from the other attributes of ownership for a protracted period, I conclude that the legislative grant did not purport to authorize by way of a voting trust provision any restraint on alienability which would have been illegal if imposed on the stock itself. Reference in the statute to "lawful" provisions lends support to my conclusion.

Let us examine the scope of the rule against restraints on the alienability of personal property, and then see if the restrictions imposed on the transfer of the voting trust certificates and the interests represented thereby impinge upon that rule.

Two Delaware cases have discussed the problem of restraints on the alienability of corporate stock. The first case decided by this court and affirmed by the Supreme Court was *Lawson v. Household Finance Corporation,* 17 *Del. Ch.* 1, 147 *A.* 312, *affirmed* 17 *Del. Ch.* 343, 352, 353, 152 *A.* 723, 727. The restraint in the *Lawson* case was imposed by the certificate of incorporation and the bylaws. In essence, it gave the corporation the first right to purchase in the event a stockholder desired to sell.

The Supreme Court first stressed the somewhat unusual nature of the business involved, namely, small loans, and the need for having people who were particularly interested in the business. The Supreme Court then stated:

"* * * We think that reasonable restrictions upon the transfer of stock of a corporation, such as are necessary and convenient to the attainment of the objects for which the company was incorporated, as the restrictions in this case appear to be, are valid and are within the powers delegated to corporations by our *General Corporation Law.*"

Finally the court discussed the principle with which we are principally concerned:

"It has been strongly urged on behalf of the appellant, that the conditions of the charter and by-laws in question constitute a restraint upon the alienation of property and in consequence thereof are void as against public policy. Our attention is called to the fact that *Section 16* of the *General Corporation Law*, makes stock in every corporation personal property.

"In this connection it is contended that one of the primary characteristics of personal property is the right to dispose of it, and that this right still exists regardless of the limitations which may be placed upon it. We agree with the contention that one of the essential incidents to the ownership of property is the right to dispose of it in the manner provided by law. This right has always been zealously guarded by the courts, and there has been a tendency for years to remove many of the old restraints upon alienation. This tendency has not been so strong in the development of the law of corporations, the voting trust being an example. In this case, however, the restrictions are not absolute and do not prevent the ultimate alienation of the stock. They simply regulate the transfer by giving the board of directors an option on the stock for a specified time."

The Supreme Court held the particular restraint reasonable. It obviously felt that a requirement that the stock should be first offered to the corporation before being sold to outsiders was a reasonable restraint on alienation under the particular facts of the case.

The second case decided by this court was *Greene v. E. H. Rollins & Sons, Inc.*, 22 *Del. Ch.* 394, 399, 404, 2 *A. 2d* 249, 251. There the certificate of incorporation imposed restrictions on the transfer of the common stock which in effect gave the corporation the right to buy the stock, and severely restricted its sale to outsiders. The court stated the issue thus:

"* * * the question is whether the selling corporation may lawfully impose the specified restraints upon the purchasing stockholder's right of alienation."

The court, after finding no special circumstances necessitating the need for the restraint, went on to say:

"In its substantial aspects, therefore, the cause requiring compulsory sale to the corporation appears, to all intents and purposes, as one that as a matter of practical operation can have no effect other than that of excluding all persons but one, the corporation, from the field of possible buyers.

"The clause which assumes to compel the complainant to sell is, therefore, far more severe in its restraint upon alienation than was the clause with which *Lawson v. Household Finance Corp., supra,* was concerned. Had it not been for the special circumstances involved in that case, we must infer that even the milder clause there involved would have been declared to constitute an unlawful restraint upon alienation. As no such special circumstances are disclosed here, it must follow that the clause in question which is much more severe and exacting in its restraint than the milder one before the courts in the *Household Finance Corporation Case* must be regarded as unreasonable and therefore not lawful."

Thus, this court, although only passing on a demurrer, indicated that absent special circumstances, a restraint limiting the sale only to the corporation was unreasonable.

Here the contract in the form of a closed voting trust agreement is between two stockholders who recite in their agreement that they desire to act together to secure competent and able management and to put into effect certain beneficial policies. To this end they in effect contract to vote their stock jointly, and not to sell such stock without joint consent for almost ten years, with cross-options to purchase in case of death. Here it is not the corporation which has imposed the restraint, but two stockholders owning a majority of one class of stock. This class is entitled to elect only two out of seven directors.

Even assuming but by no means deciding that the circumstances of this case are sufficient to justify the imposition of some reasonable restraint on the right of the parties to alienate their stock interests, we are still confronted with the question as to whether a restraint against the sale of either party's interest for almost ten years is reasonable. I think it is not. This is not a situation such as existed in *Lawson v. Household Finance Corporation, supra,* where a party is required to give another party the right of first

refusal before selling to outsiders. Here, neither party alone can sell his interest for the entire period of the trust even though he might desire to do so, and even though the other party might not desire to purchase his stock interest. Nothing in the voting trust agreement or the allegations of the complaint justifies the suspension of the power of alienation for such a period of time.

The provision giving the surviving party to the agreement the election to purchase in case of death does not render an otherwise unreasonable restraint reasonable. In the first place, the provision granting the option in the case of death does not give either party a right to *sell* his stock interest, it merely gives the survivor the right to *purchase* the stock interest of the deceased. Therefore, from the viewpoint of a party desiring to sell his interest it is evident that without the consent of a non-owner he cannot sell during the life of the voting trust. I conclude that such restraint on the right to alienate stock, which as a practical matter is absolute for about ten years, is unreasonable. The denial of any right to sell for the entire period is offensive in and of itself.

The plaintiff would have this court take a different approach to the problem. Plaintiff first suggests that there is no restraint on alienation because of the existence of the provision for the sale of the stock interest of either party with the consent of the other party. Obviously, there is a very effective restraint on the right to alienate property where the right to sell is subject to the approval of a non-owner. It hardly need be said that in all agreements containing restraints the parties by unanimous agreement could approve an alienation which would otherwise be contrary to the restraint provision. It is apparent that no agreement would ever contain a restraint on alienation if we were to give weight to the fact that all parties thereto by unanimous action could always obviate the restraining provision. Yes, we have here a very effective restraint on alienation.

Plaintiff next urges that *Paragraph* 4415 of the *Revised Code of Delaware* (1935) validates the provision in the voting trust agreement that the interest of the beneficiaries may not be assigned. There certainly can be no quarrel with the plaintiff's contention that this court has recognized that some of the principles of trust law are applicable to voting trusts. Compare: *H. M. Byllesby & Co. v. Doriot*, 25 *Del. Ch.* 46, 12 *A.* 2d 603. Are any of the provisions of *Paragraph* 4415 of the *Revised Code* legalizing so-called spendthrift trusts applicable to voting trusts? *Paragraph* 4415 reads as follows:

"CREDITORS AND ASSIGNEES OF A BENEFICIARY OF A TRUST:—The creditors of a beneficiary of a trust shall have only such rights against such beneficiary's interest in the trust property or the income therefrom as shall not be denied to them by the terms of the instrument creating or defining the trust [*sic*] or by the laws of this State; provided, however, that if such beneficiary shall have transferred property to the trust in defraud of his creditors the foregoing shall in no way limit the rights of such creditors with respect to the property so transferred. Every interest in trust property or the income therefrom which shall not be subject to the rights of the creditors of the beneficiary, as aforesaid, shall be exempt from execution, attachment, distress for rent, and all other legal or equitable process instituted by or on behalf of such creditors. Every assignment by a beneficiary of a trust of his interest in the trust property or the income therefrom which is, by the terms of the instrument creating or defining the trust unassignable, shall be void."

As this court said in *Weymouth v. Delaware Trust Co.*, 29 *Del. Ch.* 1, 45 *A.* 2d 427, 429, "This section deals specifically with restrictions upon the rights of creditors of a beneficiary with respect to trust property, and restrictions upon assignments by a beneficiary." I think it evident that this statutory provision in no way purports to legalize restraints as here imposed. The whole purport of the paragraph indicates that it was created to serve an entirely different purpose. The principal objective of a voting trust is to separate voting control from the other attributes of stock ownership. The purpose of this paragraph of the code is to protect the beneficiaries of spendthrift trusts from themselves and its corporate stock connection is fortuitous. The objectives

of the two types of trusts are such that I see no reasonable basis for concluding that the paragraph dealing with spendthrift trusts was even remotely intended to encompass voting trusts. I, therefore, conclude that *Paragraph* 4415 of the *Code* does not validate the restraint against alienation contained in the voting trust.

Plaintiff finally contends that even if we have here a restraint on alienation, nevertheless, it is not invalid as being unreasonable or contrary to public policy. If I understand the plaintiff's argument, he is saying, in effect, that the restrictions are only for nine years and nine months, and they only prevent either party from selling his stock while an option is outstanding. I think it clear as heretofore stated that under the law of this State any restraint is invalid unless accompanied by circumstances which would justify a reasonable restraint. As I have already indicated the absolute restraint here is unreasonably long and the fact of the existence of a valid cross-option provision in case of death does not render the restraint reasonable. I conclude that there exists here an unreasonable restraint on the alienability of the stock interest of each party to the voting trust agreement. The restrictive provisions of the voting trust agreement are, therefore, invalid under our law.

Plaintiff argues that even if the restraint provisions are invalid, the voting trust agreement should not be held invalid generally.

The opinion of this court in *Perry v. Missouri-Kansas Pipe Line Company,* 22 *Del. Ch.* 33, 191 *A.* 823, seems to suggest that the finding of any illegality in a voting trust renders the entire agreement illegal. However, even if we approach the question from the milder point of view which permits the court to determine whether or not an illegal provision is severable, I feel that the present voting trust agreement must fall in its entirety. In *Equitable Trust Co. v. Delaware Trust Co., ante p.* 118, 54 *A.* 2d 733, 738, this court said:

"Whether a contract is divisible or entire is a question of intent which must be determined from the terms and subject matter of the contract, together with any pertinent explanatory circumstances."

The voting trust here is essentially a personal agreement between two stockholders who for reasons expressed in the recitals desired to vote their stock jointly. The recitals demonstrate that the plaintiff and the defendant desired to act together and to prevent the acquisition of control of the Class B stock by other interests. They wanted to put into effect certain beneficial policies which they believed could "best be accomplished by acting together jointly."

It is evident to me that the parties intended the restrictive provisions to be an important part of their agreement and they contemplated that they alone should determine what policies should be followed for the entire period of the trust. They wanted no other party to have any beneficial interest in the stock unless both agreed. The tenor of the entire agreement shows that the parties decided to bind themselves to hold their stock for the term of the voting trust unless death intervened, and they made certain that they would be in a position to effectuate their policies by naming themselves the only voting trustees. It was also a closed voting trust agreement. The possibility of the right to alienate is foreign to the objectives of the agreement generally, and I conclude from the agreement itself that the parties would not have desired to bind themselves absent the restraint provisions.

I conclude from the pleadings that the voting trust agreement must be held invalid in its entirety because its illegal restraint provisions are not legally severable. It, therefore, becomes unnecessary to decide the effect of the failure to file a copy of the voting trust agreement in the principal Delaware office of the corporation.

In view of my conclusions, and plaintiff's concession that he has no cause of action if the voting trust agreement

is invalid, it follows that the motion to dismiss must be granted. The outstanding restraining orders will also be dissolved.

An order accordingly will be advised on notice.