77 A.2d 543 (1950)
SECURITY TRUST CO.
v.
SHARP et al.
Court of Chancery of Delaware, New Castle.
December 27, 1950.
Charles F. Richards (of Richards, Layton & Finger), Wilmington, for plaintiff.
C. A. Southerland and William Poole (of Southerland, Berl & Potter), Wilmington, for Hugh Rodney Sharp.
Hugh M. Morris and J. Pearce Cann, Wilmington, for University of Delaware.
Hugh M. Morris and Edwin D. Steel, Jr. (of Morris, Steel, Nichols & Arsht), Wilmington, for Homeopathic Hospital Ass'n of Delaware, Delaware Chapter of The American Red Cross, Delaware Heart Ass'n, Inc., and The New Castle Chapter of the National Foundation for Infantile Paralysis.
*544 James R. Morford (of Morford, Bennethum, Marvel & Cooch), Wilmington, for Delaware Anti-Tuberculosis Soc.
Vincent A. Theisen, Wilmington, for United Community Fund of Northern Delaware, Inc.
Clement C. Wood (of Hering, Morris, James & Hitchens) Wilmington, for Delaware Division, American Cancer Soc., Inc.
William H. Foulk and William Duffy, Jr., Wilmington, amici curiae.
SEITZ, Vice Chancellor.
In this action plaintiff trustee seeks instructions from the court as to the validity of an assignment of trust income to certain educational and charitable institutions by the largest income beneficiary of the trust.
On December 14, 1931 Isabella duPont Sharp entered into a trust agreement with plaintiff trustee establishing a trust with respect to 500 shares of stock. Under a provision thereof, the trust income was payable to her husband, Hugh Rodney Sharp, for his lifetime, and upon his death if she should survive him, to her for her lifetime. On the same date Hugh Rodney Sharp entered into an agreement with plaintiff establishing an identical trust (mutatis mutandis) in respect of 500 shares of the same stock. The income was payable to Mrs. Sharp for her lifetime and upon her death if Mr. Sharp survived her, to him for his lifetime. The remainders went to their children or their survivors.
On December 30, 1935 these agreements were amended by the parties in interest to provide that a certain amount of income of each trust should be paid to the sons of Mr. and Mrs. Sharp, the remainder of the income to be paid as theretofore directed.
Mrs. Sharp died testate on December 17, 1946. Thereafter the executors encountered certain difficulties with the Bureau of Internal Revenue. After the enactment of the so-called "Technical Changes Act" of October 25, 1949, 26 U.S.C.A. § 811(c), the only important legal question remaining between the Bureau and the executors was the applicability of the "reciprocal trust" theory, i. e., the doctrine that each of the two trusts such as the two Sharp trusts is created in consideration of the other, and therefore the creator of trust A is to be deemed in law the "settlor" of trust B and has made a transfer under which he "has retained for his life * * * the income from the property" transferred; from which it follows that trust B is includible in his estate under the provisions of the Joint Resolution of March 3, 1931, 46 Stat.L. 1516, 26 U.S.C.A.Int.Rev. Acts, page 227.
From the commissioner's determination that the trusts were reciprocal the executors on January 26, 1950 appealed to the Tax Court. Thereafter a settlement consented to by all parties was reached. This settlement was embodied in a stipulation and two agreements. For purposes of this settlement the two trusts were considered to be reciprocal. Mrs. Sharp was considered to have furnished the consideration for Mr. Sharp's trust and to have been the settlor thereof. Accordingly, a portion of Mr. Sharp's trust was included in Mrs. Sharp's gross estate. The tax was determined on the basis of these documents. No part of the trust created by Mrs. Sharp was included in her gross estate.
On June 3, 1950 Mr. Sharp executed and delivered to the plaintiff trustee an instrument of assignment, assigning to eight educational or charitable institutions in certain designated amounts all the trust income payable to him from the trust created by Mrs. Sharp. All of the assignees have accepted the gifts. Thereafter plaintiff trustee filed this suit for instructions seeking to ascertain whether such assignment is valid. The named defendants are Mr. Sharp and the assignees. They have all filed answers admitting jurisdiction and admitting, with few exceptions, the averments of the complaint. By stipulation of the parties, the case is being heard and determined upon the facts alleged in the complaint and admitted in the answer of the defendant Sharp plus certain additional facts set forth in a stipulation of the parties. Since all defendants contend that the assignment is valid, amici curiae were appointed to present arguments against its validity.
The ultimate question before the court is whether Mr. Sharp's assignment is invalid because of the provisions of the first paragraph *545 of Paragraph Tenth of Mrs. Sharp's trust of December 14, 1931. This paragraph reads as follows:
"Tenth: It is hereby agreed between the Settlor and the Trustee that the trusts hereby created are irrevocable, and that no part of the principal or income of the Trust Estate hereby created shall be subject to control, debts, liabilities and/or engagements of any of the beneficiaries thereof, and no part of said principal or income shall be subject to assignment or alienation by them, or any of them, or to execution or process for the enforcement of judgments or claims of any sort against such beneficiaries, or any of them."
Defendants' principal argument in favor of the validity of the assignment goes like this: The prohibition in a trust agreement against the alienation of income by a beneficiary does not apply where the beneficiary is also the settlor. This is so because public policy does not permit one to create a spend-thrift trust with his own property for his own benefit. This rule is unaffected by the existence of a statute validating spendthrift trusts. He who furnishes the consideration for the creation of a trust is deemed to be the settlor thereof; in the case of "reciprocal trusts", each is deemed to be the consideration for the other, and the nominal creator of one is deemed to be the real settlor of the other. Mr. Sharp having furnished the consideration for Mrs. Sharp's trust, the two trusts being reciprocal, he should here be treated as the real settlor of Mrs. Sharp's trust.
The amici curiae make the following answer to this contention: Even if the trusts here are reciprocal, Mrs. Sharp is the settlor of the trust in question because (1) the property transferred in trust by her was her own. She imposed the limitations on the right of the beneficiaries to control. Mr. Sharp, as a beneficiary accepted the trust on the conditions stated and acquiesced therein for more than 15 years. Mr. Sharp and his assignees are therefore estopped to deny the validity of the provision prohibiting assignment of income. And (2), the reciprocal trust theory which treats the beneficiary as the settlor of the trust of which he is beneficiary, is confined to tax cases and is not applicable to situations involving general trust law.
All of the defendants' legal arguments are premised on the assumption that Mr. Sharp should be here treated as the settlor of Mrs. Sharp's trust. In discussing the legal principles, I shall make the same assumption and thereafter decide the point assumed.
In the not unusual case, a person creates a so-called spendthrift trust for his own benefit by transferring his own property in trust for himself. He may do the same thing by providing the consideration for a conveyance by another person to the trustee. In the latter case the interest of the person who furnishes the consideration for the creation of the trust will be treated, at least for certain purposes, the same as if it had resulted from a conveyance of his own property directly to the trustee. See Griswold Spendthrift Trusts (2d Ed.) Sec. 487; 1 Scott on Trusts Sec. 156.3.
This court has ruled that a settlor-beneficiary of a spendthrift trust in which no other party is interested may terminate it at will. This is true even though the trust agreement contains a prohibition against termination. See Weymouth v. Delaware Trust Co., Del.Ch., 45 A.2d 427; and compare Wilmington Trust Co. v. Carpenter, Del.Ch., 75 A.2d 815. It has likewise been generally held that a settlor-beneficiary of a life estate in a trust containing a prohibition against assignment may, nevertheless, assign his interest. See Griswold Spendthrift Trusts (2d Ed.) Sec. 494. This rule is based on public policy which does not permit one to create a spendthrift trust with his own property for his own benefit. This appears to be justified on the theory that one should not be permitted to have the substantial benefits of ownership without its burdens. Since the law does not permit him to use the trust to escape the burdens of ownership, the courts do not hold him to his selfimposed restraint on his own property. This seems reasonable. See Byrnes v. Commissioner, 3 Cir., 110 F.2d 294. Considering the matter apart from our spendthrift trust statute, I conclude that the settlor-beneficiary of a life estate may assign his interest *546 even though the trust instrument contains a prohibition against assignment of income. I see no reason to differentiate between his right to terminate his interest and his right to assign it.
Does our spendthrift trust statute validate the provision of the trust agreement prohibiting assignment of income? The statute[1] provides: "The creditors of a beneficiary of a trust shall have only such rights against such beneficiary's interest in the trust property or the income therefrom as shall not be denied to them by the terms of the instrument creating or defining the trustor by the laws of this State; provided, however, that if such beneficiary shall have transferred property to the trust in defraud of his creditors the foregoing shall in no way limit the rights of such creditors with respect to the property so transferred. Every interest in trust property or the income therefrom which shall not be subject to the rights of the creditors of the beneficiary, as aforesaid, shall be exempt from execution, attachment, distress for rent, and all other legal or equitable process instituted by or on behalf of such creditors. Every assignment by a beneficiary of a trust of his interest in the trust property or the income therefrom which is, by the terms of the instrument creating or defining the trust unassignable, shall be void."
The language of the statute is not circumscribed in terms and might be said to impliedly embrace settlor-beneficiary interests. However, I believe, in the light of the common law applicable to the settlor-beneficiary situation when the statute was passed (1933), the statute should not be held applicable to settlor-beneficiary trust interests. The reasons for this construction are more apparent in cases where creditors have attacked self-imposed prohibitions on alienation. See Schenck v. Barnes, 156 N.Y. 316, 50 N.E. 967, 41 L.R.A. 395. However, in view of the strong, perhaps "judicially" created, public policy against restraints on alienation, I conclude that the statute does not apply to the interest of a settlor-beneficiary. Compare Schenck v. Barnes, supra. In view of its over-all implications I would want to see the most explicit statutory language before I would feel justified in concluding that the statute encompassed settlor-beneficiary interests. Compare Tracey v. Franklin, Del., 67 A.2d 56; Wilmington Trust Company v. Carpenter, supra.
I need not consider what would have been the law in Delaware prior to the adoption of the spendthrift trust statute because it is not contended that such law would have validated the provision prohibiting the assignment of a settlor-beneficiary's interest.
It follows from the foregoing legal principles which I have here adopted that the assignment is valid if Mr. Sharp is to be considered the settlor of Mrs. Sharp's trust. Should Mr. Sharp be treated here as though he were the settlor of Mrs. Sharp's trust?
As to the trust of which Mrs. Sharp is the nominal settlor, did Mr. Sharp furnish the consideration for the transfer of the stock made to the trust by Mrs. Sharp? In order to answer this question, consideration must be given to the facts surrounding the creation of the trust in question.
Mrs. Sharp, with the assistance of an attorney, executed the trust agreement in question on December 14, 1931. She transferred to Security Trust Company, trustee, 500 shares of common stock which she owned in Delaware Realty and Investment Company. Under the terms of the trust agreement Mrs. Sharp was the nominal settlor. The trust income was payable to her husband, Hugh Rodney Sharp, for his lifetime and upon his death, if she survived him, to her for her lifetime. Under certain circumstances, if the trust continued, the income was payable to the Sharp children or their survivors in equal shares. Upon the death of the survivor of certain individuals, the trust was to terminate and the assets were to be distributed in equal shares to the Sharp children or their survivors.
*547 By an agreement of the same date Mr. Sharp, with the assistance of the same attorney, created a trust with the same trust company. He also conveyed to the trustee 500 shares of common stock which he owned in Delaware Realty Investment Company. His wife was to receive the income for life and upon her death, if Mr. Sharp survived her, it was payable to him for his lifetime. Under the same certain circumstances as appeared in Mrs. Sharp's trust, if the trust continued, the income was to be divided equally among the Sharp children or their survivors. It was provided that upon termination of the trust the assets should be divided in equal shares among the Sharp children or their survivors.
On the basis of the undisputed facts just narrated, I conclude that Mrs. Sharp executed her trust agreement in consideration of Mr. Sharp's executing his trust agreement and vice versa. These trusts are what are known as reciprocal trusts. I base my conclusion on the identity of creation dates, similarity of terms, identity of trustees and attorney, sizes of the trusts, similarity of assets, and the relationship of the parties and the beneficiaries. Compare Orvis v. Higgins, 2 Cir., 180 F.2d 537. It thus becomes unnecessary to consider whether the proceedings in the Tax Court of the United States constituted a determination here binding as to the reciprocal nature of these trusts.
In certain tax fields one reciprocal trust is deemed to constitute the consideration for the other and the nominal creator of one is deemed to be the real settlor of the other. See Lehman v. Commissioner, 2 Cir., 109 F.2d 99; In re Perry's Estate, 111 N.J.Eq. 176, 162 A. 146. Defendants urge that this rule should be applied in the field of general trust law so that Mr. Sharp would be considered here to be the settlor of Mrs. Sharp's trust.
Amici curiae argue that the principle applied to tax cases involving reciprocal trusts should not be adopted in the trust law field generally. They point out that it has a practical justification in tax law, that it has not been recognized in any case involving a non-tax situation and that its general application would result in certain bizarre consequences where the trust instrument imposes duties on the settlor.
It is unnecessary to discuss the reasons for the application of the principle in so-called reciprocal trust tax cases. It is sufficient to say that the courts have decided that the form will not be permitted to obscure the substance of the transaction. However, the fact that the trusts are reciprocal is not in and of itself the vital point because, as the court said in the Lehman case, "The fact that the trusts were reciprocated or `crossed' is a trifle, quite lacking in practical or legal significance." [109 F.2d 100.] The important fact in such situations is that one trust was executed in consideration of the execution of the other. Being practically identical in both purpose and objective, the court  looking to substance  will say that each party, by indirection, created a trust for his own benefit. Moreover, it is not unlikely that the same approach would be taken by the courts when such trusts are attacked by creditors. See the dictum in Provident Trust Co. v. Banks, 24 Del.Ch. 254, 9 A.2d 260.
Since the court will look through form to substance, in order to impose burdens on the interest of a settlor-beneficiary, I think it would be highly unequitable to insist that he be bound by what are in reality self-imposed restraints on the alienability of his interest. In other words I think the equities warrant the court in concluding that the principle recognized in the so-called reciprocal trust tax cases and creditors' cases should also be applied when the question of alienability of income is involved. The same result is justified when the substance of the transaction is examined in the light of general trust principles. See 1 Restatement of the Law of Trusts Sec. 156e.
The argument of amici curiae that Mrs. Sharp's expressed intention should control cannot be accorded substantial weight here when the basic objectives sought to be reached by the creation of the two trusts are brought into sharp focus. For the same reasons, it would be inequitable *548 to impose an estoppel against Mr. Sharp and his assignees. I recognize that there is much substance to the estoppel argument when the case arises as it does here, but the law has stripped this type of trust of much of its substance. Having done so, the basis for upholding the validity of the provisions in the present situation loses much of its force. Thus, I conclude that Mr. Sharp and his assignees are not estopped to attack the validity of the provision prohibiting the assignment of income.
The question as to the identity of the settlor for purposes of performing other trust duties will be determined when and if the matter is ever presented. Other arguments of counsel need not be considered.
I conclude that the assignment by Hugh Rodney Sharp is valid and the trustee is to be governed accordingly.
Order on notice.
NOTES
[1] Revised Code of Delaware 1935, Paragraph 4415. Although Mrs. Sharp's trust was created prior to the enactment of this statute, I shall assume, without deciding, that the validity of the assignment requires a consideration of the statute.