ONEIDA INDIAN NATION OF NEW YORK; Robert W. Burr, Jr., individually and in his capacity as President of the Oneida Indian Nation of New York; Harold Cornelius, individually and in his capacity as Vice-President of the Oneida Indian Nation of New York; Geralda Thompson, individually and in her capacity as Clerk of the Oneida Indian Nation of New York; Janice Luongo, individually and in her capacity as Recording Secretary of the Oneida Indian Nation of New York; Winnifred Jacobs, individually and in her capacity as Treasurer of the Oneida Indian Nation of New York; and Thomas Jones, Jr., individually and in his capacity as Sergeant-at-Arms of the Oneida Indian Nation of New York, and all as class representatives, Plaintiffs,

v.

William P. CLARK, individually and in his official capacity as Secretary of the Interior; Frank K. Richardson, individually and in his official capacity as Solicitor of the United States Department of Interior; Kenneth L. Smith, individually and in his official capacity as Assistant Secretary of the Interior-Indian Affairs; John W. Fritz, individually and in his official capacity as Deputy Assistant Secretary-Indian Affairs; William Ott, individually and in his official capacity as Acting Eastern Area Director, Defendants,[1]

Oneida Indian Nation of New York and Ray Halbritter, Defendant-Intervenors.

No. 79–CV–652.

United States District Court, N.D. New York.

Aug. 30, 1984.

---

1. Pursuant to Fed.R.Civ.P. 25(d), the Court has substituted the officials currently holding the various positions named in caption for those originally sued.

Bertram E. Hirsch, Floral Park, N.Y., for plaintiffs.

Frederick J. Scullin, Jr., U.S. Atty., Syracuse, N.Y., for defendants; Gustave Di-Bianco, Asst. U.S. Atty., Syracuse, N.Y., Colleen Kelley, of counsel.

Indian Law Resource Center, Washington, D.C., for defendant intervenors; Curtis Berkey, Washington, D.C., of counsel.

## MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

This is a tribal recognition action in which both plaintiffs and defendant-intervenors claim to be the rightful government of the Oneida Indian Nation of New York ["New York Oneidas"]. Plaintiffs are known as the "Executive Committee"; defendant-intervenors are known as the "Marble Hill Oneidas" or the "traditionalist faction".

Presently before the court are cross-motions for partial summary judgment which are predicated on an unsuccessful affidavit procedure instituted by the defendant, Department of the Interior ["Department"], to determine which group should be recognized as the governing body of the New York Oneidas. Plaintiffs claim that the Department improperly and unlawfully administered the affidavit process which, but for the Department's allegedly unlawful conduct, would have resulted in recognition of the Executive Committee as the exclusive government of the New York Oneidas. Plaintiffs contend that they fully complied with the requirements for recognition established by the Department and seek, therefore, to have this court order the Department to grant exclusive governing body recognition to the Executive Committee. Plaintiffs maintain that the Department's decision to deny recognition was arbitrary, capricious, and an abuse of discretion. Plaintiffs also allege that the Department's unlawful administration of the affidavit procedure violated the religious and voting rights of certain plaintiffs and

constituted a breach of the trust responsibility owed to the plaintiffs by the United States Government.

All parties agree that this issue is ripe for summary judgment as there is no genuine dispute as to any material facts. Although characterized as a motion for partial summary judgment, plaintiffs' motion actually seeks judicial review of administrative agency action, namely, the Secretary of the Interior's decision to deny Executive Committee recognition.

For the reasons set forth below, the court holds that the Secretary did not abuse his discretion or act in an arbitrary or capricious manner by deciding to deny the Executive Committee recognition as the sole and exclusive governing body of the New York Oneidas. Furthermore, the court finds that plaintiffs' other claims arising out of the administration of the affidavit process are without merit.

*Background*

Plaintiffs, the Oneida Indian Nation Executive Committee, governed the New York Oneidas from 1948 until 1975 under a duly adopted and ratified Nation Constitution.[2] In December, 1975, the Department withdrew its recognition of the Executive Committee as the exclusive governing body of the New York Oneidas. Since that time the New York Oneidas have not had a United States Government-recognized governing body. The United States and the Oneidas have proposed and implemented different approaches to re-establishing federal recognition of an Oneida government, thus far without success.[3]

As part of this continuing process to recognize a governing body, the Department agreed to engage in an affidavit procedure suggested by Bertram Hirsch, the attorney for the Executive Committee. In a letter to then Assistant Secretary Forrest Gerard, Mr. Hirsch proposed that the United States recognize a Nation governing body if 50% plus one of those persons over the age of eighteen whose name appeared on a previously certified list of federally recognized New York Oneidas[4] supported, via affidavit, such a governing body. Administrative Record [hereinafter "AR"] # 32.

Assistant Secretary Gerard responded by letter stating that although the Government would agree to engage in the suggested affidavit procedure, tribal recognition would be conditioned upon proof that the "affidavit procedure [had been] conducted in a basically fair manner". AR # 31. To ensure that the procedure would be fair, the Government outlined the methodology to be used in collecting the affidavits. At issue here is paragraph five of Mr. Gerard's letter which states:

> It would not be effective or conducive to fairness to allow affidavits to be collected indefinitely. *Therefore, to be considered valid, all affidavits must be submitted within ninety (90) days of this letter.* If, at any time during that ninety days, the Department determines that affidavits from fifty (50) percent plus one of New York Oneidas over eighteen (18) named on the BIA list have been presented to it, the Department will recognize the Executive Committee as the sole and exclusive governing body of the Nation and accept the February 4, 1948, constitution as the governing docu-

---

**2.** On February 4, 1948, Nation members in New York, at a duly convened meeting of the Nation membership, adopted and ratified a Nation Constitution and bylaws. Under this Constitution, the general membership of the Nation elects six officers every two years. These officers constitute an Executive Committee which is the governing body of the Nation.

**3.** Recognition of a governing body is important to all New York Oneidas because receipt of certain federal benefits and services is contingent upon federal recognition of a governing body. Federal recognition is also required for

distribution of the "treaty cloth" guaranteed by the Treaty of November 11, 1794, 7 Stat. 44.

**4.** On November 21, 1978, Acting Assistant Secretary of Indian Affairs Rick Lavis officially certified a "Listing of Federally Recognized Oneida Indians of New York". The list included the name, date of birth, sex, and clan of each federally recognized Oneida Indian. The list was prepared as part of the Government's continuing efforts to ascertain the governing preference of the New York Oneidas.

ment for the Nation, assuming the affidavit process is determined to have been fairly conducted. If a sufficient number of affidavits is not collected within ninety (90) days of this letter, the status of the Oneidas tribal government vis-a-vis the Department of Interior will remain in its present state—the non-recognition by the Department of any governing body within the New York Oneida Nation. (Emphasis added)

*Id.* [hereinafter cited as the Gerard letter or the December 12 letter]

The deadline for submission of affidavits was March 11, 1980. To satisfy the Department that the affidavit process had been conducted in a "basically fair manner", certain facts had to "be established either through the actual language of each affidavit or through supplemental affidavits executed by those persons responsible for gathering the affidavits". *Id.* The critical facts to be established by either the individual or supplemental affidavits included: (1) that the individual affiant had not been promised anything to sign the affidavit and that he or she was signing it freely and without duress; and, (2) that the affiant either had or had access to a copy of the February 4, 1948 Constitution.[5] *Id.*

The individual affidavits used by the Executive Committee did not contain the statement that the individual affiant had or had access to a copy of the 1948 Constitution; to establish that fact supplemental affidavits were necessary.[6]

To meet the requirement that 50% plus one of all federally certified adult Oneidas supported the Executive Committee and the 1948 Nation Constitution, affidavits supporting the Executive Committee were required from 223 New York Oneidas.[7] On or before March 11, 1980, the Executive Committee submitted to the Department 253 individual affidavits, 23 of which were invalid on their face. It is undisputed that one of the necessary supplemental affidavits was submitted on March 14, 1980, three days after the March 11, 1980 deadline. This supplemental affidavit was required to validate thirty-three individual affidavits. As a result of the untimely submission of the supplemental affidavit, the Department invalidated the thirty-three individual affidavits, thereby reducing the number of valid individual affidavits to 197, well below the 223 needed to establish the Executive Committee as the governing body of the New York Oneidas.[8]

**5.** Declaration of support for the Executive Committee alone was insufficient because it meant nothing except in relation to the 1948 Constitution. At the time of the voting, none of the specific Executive Committee were identified by name. The United States Government never recognized the 1948 Constitution as the valid governing document of the New York Oneidas because no evidence had ever been received by the Government showing that the general membership of the Oneida Nation ever approved and adopted it. The requirement that the individual affiant either have or have access to a copy of the 1948 Constitution was necessary to show that the affiant understood that they were "voting" for the Constitution as well as the Executive Committee.

**6.** All of the individual affidavits stated:

I recognize and support the Executive Committee of the Oneida Indian Nation of New York as the sole governing body of the Nation. I recognize and support the February 4, 1948 Constitution and Bylaws, as amended, under which the Executive Committee has been duly organized and continues to be duly organized. No other governing body or form

of government exists within the Nation, either organized under the 1948 Constitution or otherwise.

The supplemental affidavits described the collection methods of each supplemental affiant. In addition, the supplemental affiants were required to affirm that no promises had been made in return for the individual affiants' support, that the individual affidavits had been signed freely and without duress, and that the individual affiants either had or had access to a copy of the 1948 Constitution.

**7.** The Department originally determined that there were 458 New York Oneidas eligible to "vote", thus requiring 230 affidavits in support of the Executive Committee. AR # 13. Upon appeal the Department ruled that 13 deceased Oneidas should be eliminated from the pool of eligible voters thereby reducing that pool to 445. To achieve governing body recognition, the Executive Committee had to submit 223 valid affidavits.

**8.** The Department also invalidated two individual affidavits because they revoked their support for the Executive Committee prior to the dead-

By letter dated April 25, 1980, Deputy Assistant Secretary Rick Lavis stated:

Since not all of the necessary criteria of the December 12 letter were set out in the body of the [33] individual affidavits, the individual affidavits and the supporting affidavits were interdependent documents. Therefore, due to the untimely submission of the above supporting affidavit, 33 of the individual affidavits could not be considered valid.

AR # 13.

The Government, therefore, declared that the affidavit process had been unsuccessful. The decision to disallow the thirty-three individual affidavits was affirmed on administrative appeal. AR # 7. Under Secretary James A. Joseph upheld the Lavis ruling stating that "the individual and supporting affidavits were inter-dependent to an inseparable degree [and] their concurrent submission was absolutely necessary". *Id.*

Plaintiffs now ask this court to, *inter alia,* review the agency's decision pursuant to the Administrative Procedure Act [APA], 5 U.S.C. §§ 701–706 (1976). Plaintiffs contend that the invalidation of the thirty-three individual affidavits because their supporting affidavit was allegedly untimely was arbitrary, capricious, and an abuse of discretion. The Government counters that its requirements, particularly the March 11, 1980 deadline for the submission of all affidavits, were necessarily absolute in view of the volatile and controversial nature of the situation. The Government maintains that the March 11, 1980 deadline applied to *all* the affidavits and it could not allow the late supplemental affidavit to validate the thirty-three individual affidavits without bending the rules established in the December 12 letter in favor of the plaintiffs.

line for revocation. This reduced the final number of affidavits accepted by the Department to 195.

**9.** Judicial review of agency action conducted "on the record" is governed by the "substantial evidence" test. *See Overton Park,* 401 U.S. at 413–16, 91 S.Ct. at 822–23; *see also National Nutritional Foods Ass'n v. Weinberger,* 512 F.2d

## Discussion

### A. The Administrative Procedure Act Claims

▇ Both parties acknowledge that judicial review of the Secretary's decision is governed by the "arbitrary and capricious" standard of the APA. *See Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 413–14, 91 S.Ct. 814, 822, 28 L.Ed.2d 136 (1971). In the instant case, the Interior Secretary's action was clearly of an informal nature—no statute required the Secretary to decide whether to validate or invalidate the thirty-three individual affidavits in an "on the record" proceeding.[9] Under § 10(e), 5 U.S.C. § 706, therefore, this court may hold unlawful and set aside agency action only if it finds the same to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law". 5 U.S.C. § 706(2)(A).

▇ The arbitrary and capricious standard is highly deferential; agency action is presumed to be valid. *Environmental Defense Fund v. Costle,* 657 F.2d 275, 283 (D.C.Cir.1981). Although the court's factual inquiry must be searching and careful, the ultimate standard of review is narrow. *Overton Park,* 401 U.S. at 416, 91 S.Ct. at 823. Moreover, a court may not substitute its judgment for that of the agency. *Id.* *See also State of Connecticut v. Environmental Protection Agency,* 696 F.2d 147, 155 (2d Cir.1982). Under the arbitrary and capricious standard, a court is empowered to consider whether the agency's decision was based on a consideration of the relevant factors and whether a clear error of judgment has been committed. *Overton Park,* 401 U.S. at 416, 91 S.Ct. at 823. If the agency did not consider all the relevant factors or committed a clear error of judgment, the court may set aside the agency's

688, 700–01 (2d Cir.), *cert. denied,* 423 U.S. 827, 96 S.Ct. 44, 46 L.Ed.2d 44 (1975). Judicial review of informal agency action is governed by the "arbitrary-capricious" test unless a particular statute provides otherwise. K. Davis, Administrative Law Treatise § 29.00–1 (2d ed. 1982 Supp.)

decision. *Id.* In the context of the arbitrary and capricious standard, a clear error of judgment will not be found so long as the agency's decision has a rational basis. *Ethyl Corp. v. Environmental Protection Agency,* 541 F.2d 1, 34 n. 74, (D.C.Cir.) *cert. denied,* 426 U.S. 941, 96 S.Ct. 2663, 49 L.Ed.2d 394 (1976). If a reasonably discernible rational basis for the agency's decision exists, as expressed by the agency itself, *id.* at 34 n. 73, the agency's decision must be affirmed. *Costle,* 657 F.2d at 283.

Plaintiffs assert that the Department's decision to deny Executive Committee recognition as the exclusive governing body of the New York Oneidas was arbitrary and capricious in at least two respects. First, plaintiffs contend that the Gerard letter of December 12, 1979 requiring all affidavits to be submitted by March 11, 1980 did not apply to the supplemental affidavits. Second, plaintiffs contend that the affidavit process should be evaluated under the standard of "basic fairness" and that the submission of the supplemental affidavits after March 11, 1980 could not have had any adverse affect on the fairness of the procedure because all the "voting" actually took place before the March 11, 1980 deadline.

### 1. The March 11, 1980 Deadline

The Department's decision to declare March 11, 1980 as the deadline for the collection and submission of all affidavits was based on a consideration of the relevant factors. *See* AR # 13; *Overton Park,* 401 U.S. at 416, 91 S.Ct. at 823. The December 12 letter explicitly stated that basic fairness demanded that certain facts had to be established via affidavit—either in the individual or the supplemental affidavits. None of the individual affidavits used by the plaintiffs contained a statement that affiant either had or had access to a copy of the 1948 Constitution; consequently supplemental affidavits were necessary. The agency found that the individual and supplemental affidavits were interdependent documents because each alone was insufficient to comply with the established Department requirements. The supplemental

affidavits, therefore, were an intrinsic part of the affidavit procedure and thus subject to the March 11, 1980 deadline. The court agrees with the Department of the Interior that fairness to all the New York Oneidas, particularly in light of the controversy surrounding the affidavit process, would not have been served if the Department had been lax with the affidavit procedure requirements.

No clear error of judgment was committed because there is a rational basis for the Department's decision. The Department "abided by a strict application of the terms and conditions established in the December 12 letter". AR # 13. The Department discusses the issues and clearly sets out the rationale for its decision. A fair reading of the December 12 letter yields the conclusion that the March 11, 1980 deadline was intended to extend to all affidavits.

Because there is a rational basis for the Department's decision declaring March 11, 1980 the deadline for submission of all affidavits, the Department's decision must be upheld. *See Costle,* 657 F.2d at 283. The Department could rationally conclude that interpreting the December 12 letter to allow late submission of the supplemental affidavit could be interpreted as bending the rules in favor of the plaintiffs. Such an interpretation would cast doubt on the Department's neutrality and diminish the Department's credibility with the various Indian groups with which it deals. The court therefore finds that the Department's decision was a valid exercise of discretion.

### 2. The Invalidation of the 33 Individual Affidavits

Plaintiffs contend that in evaluating the affidavit process the standard that should be used is one of "basic fairness." Plaintiffs assert that even if one supplemental affidavit was submitted three days after the final deadline, the untimeliness did not affect the fairness of the procedure because all of the individual affidavits had been executed prior to the March 11, 1980 deadline. Plaintiffs rely on the language of the Gerard letter which states:

We ... agree that the New York Oneidas should ... have an opportunity to determine who their leaders are and what kind of tribal government they desire through the affidavit procedure you propose. If we are satisfied that the affidavit procedure is conducted in a basically fair manner, this Department is willing to recognize a tribal government determined through affidavit.

■ Plaintiffs, however, have ignored the fact that the Gerard letter sets out seven specific and verifiable requirements to ensure that the procedure would be basically fair. Plaintiffs were required to comply with these requirements before the Executive Committee could be recognized as the exclusive governing body of the New York Oneidas. The Department found that the Executive Committee did not comply with these requirements and, therefore, denied recognition to the Executive Committee. The decision to invalidate the thirty-three individual affidavits was based on a consideration of previously established standards that had been agreed to by both parties. The Department's decision to adhere to a strict interpretation of the terms and conditions set forth in the Gerard letter was well within the agency's discretion and was not arbitrary and capricious. *See Overton Park*, 401 U.S. at 415–16, 91 S.Ct. at 823.

*B. Plaintiffs' Other Claims*

In addition to their claim that the Department's refusal to recognize the Executive Committee is in violation of the APA, the plaintiffs contend that the Department's decision violated the religious and voting rights of certain plaintiffs and breached the Government's trust responsibility to the plaintiffs. The court finds these contentions without merit, but will briefly discuss them.

*1. Plaintiffs' Free Exercise of Religious Rights*

■ The affiant who submitted her supplemental affidavit three days after the deadline [hereinafter referred to as affiant "L"] submitted her affidavit in an untimely fashion because she had to attend to personal and religious obligations resulting from a death in her immediate family. Plaintiffs contend that "penalizing" the Executive Committee for the untimely submission violates affiant "L's" "free exercise" of religious rights guaranteed by the First Amendment and the American Indian Religious Freedom Act, 42 U.S.C. § 1996 (Supp. IV 1980) [hereinafter cited as "AIRFA"]. Assuming *arguendo* that the plaintiffs have standing to assert a claim on behalf of affiant "L", a doubtful proposition, the court finds plaintiffs' arguments without merit. Affiant "L" participated in all the religious observances made necessary by the death in her family. Furthermore, her religious freedom was not unduly burdened such that she was forced to either (a) choose between her religious beliefs and the receipt of a governmental benefit to which she was entitled, *see Thomas v. Review Board of the Indiana Employment Security Division*, 450 U.S. 707, 717–18, 101 S.Ct. 1425, 1431–32, 67 L.Ed.2d 624 (1981); *Sherbert v. Verner*, 374 U.S. 398, 404, 83 S.Ct. 1790, 1794, 10 L.Ed.2d 965 (1963); or (b) choose between violating her religious beliefs and violating state or federal law. *See Wisconsin v. Yoder*, 406 U.S. 205, 215, 92 S.Ct. 1526, 1533, 32 L.Ed.2d 15 (1972). At stake here was affiant "L's" opportunity to help her tribe. The affidavit process extended over a 90 day period. During the final days before the deadline very few affidavits were executed. There was no necessity for affiant "L" to wait until the last minute to execute her affidavit; that was her decision. It cannot be concluded that the Department's deadline coerced affiant "L" into choosing between the free exercise of her religious rights and recognition of the Executive Committee.

Plaintiffs' reliance on AIRFA is also misplaced. AIRFA protects only those traditional native religious rights secured by the First Amendment's "free exercise" clause. *See Wilson v. Block*, 708 F.2d 735, 746 (D.C.C.), *cert. denied*, — U.S. —, 104

S.Ct. 371, 78 L.Ed.2d 330 (1983). Because the Department's actions withstand constitutional scrutiny, they also comport with the policy of AIRFA. AIRFA does not create a separate cause of action. *See Crow v. Gullet*, 541 F.Supp. 785, 793–94 (D.S.D.1982), *aff'd*, 706 F.2d 856 (8th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 413, 78 L.Ed.2d 351 (1983). Thus, plaintiffs' contention that the Executive Committee must be recognized because the Department's decision impinged on affiant "L's" free exercise of religion has no merit.

### 2. Plaintiffs' Voting Rights

█ Plaintiffs assert that the Department's administration of the affidavit process violated the voting rights of the thirty-three individual affiants. Again, assuming *arguendo* that plaintiffs have standing to assert a claim on behalf of the individual affiants, the court concludes that plaintiffs' allegation fails to state a claim against the defendants. The individual affiants "voted" by signifying their preference for the Executive Committee as the recognized governing body of the New York Oneidas. It was then plaintiffs' responsibility to ensure compliance with all the required procedures. It was the failure of the plaintiffs, namely, the failure to submit affiant "L's" affidavit in a timely fashion, that resulted in the invalidation of the thirty-three individual affidavits. If the individual affiants have a claim against anyone, it is the plaintiffs, not the defendants.

### 3. The Department's Trust Responsibilities

█ Plaintiffs assert that the defendants have violated the trust responsibility owed to them. Plaintiffs maintain that this trust responsibility includes protecting the ability of the tribe to be self-governing and avoiding the creation of a hiatus in tribal government which deprives the tribe of important benefits. They argue that in evaluating the propriety of the Department's action, this court must impose a more rigorous standard of review because of the "overriding duty of our Federal Government to deal fairly with Indians". *Morton v. Ruiz*, 415 U.S. 199, 236, 94 S.Ct. 1055, 1074, 39 L.Ed.2d 270 (1974). The court finds this argument unpersuasive.

The appropriate standard of review does not change merely because the agency action involves Indians. However, even if a stricter standard were applicable, the protection would not apply solely to the plaintiffs, but to all New York Oneidas including the defendant-intervenors. In view of the well-recognized responsibility of the government to deal fairly with all Indians, the Department's trust responsibility requires that it remain neutral with regard to the various Oneida factions—the government must deal fairly with all New York Oneidas, not just the Executive Committee. The Department's decision was not a breach of its trust responsibility; it was a decision that reflected the Department's commitment to neutrality.

### CONCLUSION

The court finds that the Department of Interior considered all the factors relevant to its determination that the affidavit process had been unsuccessful. Because the Department had a rational basis for its decision and therefore did not commit a clear error of judgment, the court finds that the Department did not act in an arbitrary or capricious manner and did not abuse its discretion with respect to the difficult issues presented to it. Furthermore, the court finds plaintiffs' other claims arising out of the affidavit process without merit.

Accordingly, the plaintiffs' motion for partial summary judgment is denied and the defendants' motion for partial summary judgment is granted.

IT IS SO ORDERED.