David LaROCHE, as Trustee of the LaRoche Grantor Income Trust

v.

VERMONT FEDERAL BANK, FSB.

VERMONT FEDERAL BANK, FSB and William J. Cody, Jr.,

v.

David LaROCHE, as Trustee of the La-Roche Grantor Income Trust and LaRoche Grantor Income Trust.

Civ. A. Nos. 85–238, 85–241.

United States District Court, D. Vermont.

Jan. 24, 1986.

William W. Pearson, Downs, Rachlin & Martin, Burlington, Vt., and Martha V. Gordon, Manchester, N.H., for David La-Roche.

Clarke A. Gravel and Robert B. Hemley, Gravel & Shea, Burlington, Vt., and Joseph M. Hassett, John C. Keeney, Jr., Martha L. Roadstrum, James G. Middlebrooks, Hogan & Hartson, Washington, D.C., for Vermont Federal Bank, FSB and William Cody.

## OPINION AND ORDER

BILLINGS, District Judge.

On November 29, 1985, David LaRoche as Trustee of the LaRoche Grantor Income Trust, and the LaRoche Grantor Income Trust (hereinafter collectively referred to as "LaRoche") filed with this Court, pursuant to Fed.R.Civ.P. 56, a motion for summary judgment in their favor concerning the validity of Section 8 of the Vermont Federal Bank Charter. On December 6, 1985, David LaRoche requested the Court to decide his complaint by summary judgment rather than by trial. Pursuant to the December 6, 1985 stipulation, the Court considered the evidence presented in the motion for summary judgment of Vermont Federal Bank, FSB (hereinafter "VFB") filed with this Court October 2, 1985, along with supporting papers subsequently filed, and the summary judgment motion of LaRoche filed November 29, 1985, along with supporting papers subsequently filed. For the reasons stated below the Court holds that Section 8 of the VFB Charter is valid and enforceable; the summary judgment motion of LaRoche is DENIED and judgment is entered in favor of VFB and William J. Cody, Jr.

## PROCEDURAL BACKGROUND

LaRoche commenced a tender offer for the purchase of VFB's stock, $.01 per value per share, on September 13, 1985 pursuant to a Summary Advertisement, an Offer to Purchase and a Letter of Tender.[1] On that same date, David LaRoche filed an action against VFB in this Court for a declaratory judgment that Section 8 of the VFB Charter was unenforceable and for injunctive

relief against its enforcement. Subsequently, VFB and William J. Cody, Jr. ("Cody") brought an action to enjoin LaRoche from making a tender offer for VFB stock on grounds that the offer (a) violated Section 8 of the VFB Charter and (b) contained misleading statements of material fact and omitted material facts in violation of the Securities Exchange Act of 1934. These cases were consolidated September 18, 1985.

On September 18, 1985, after a hearing, this Court enjoined LaRoche from proceeding with the September 13, 1985 tender offer to purchase 123,800 shares of VFB common stock. LaRoche appealed the decision but later withdrew the appeal.

## FINDINGS OF FACT

The parties do not dispute the facts. On November 17, 1985, VFB converted from a federal mutual savings bank to a federal stock savings bank pursuant to 12 U.S.C. §§ 1725, 1726, 1730 and Federal Home Loan Bank Board ("FHLBB") regulations promulgated thereunder, 12 C.F.R. § 563b. The initial charter of VFB contained a provision prohibiting any acquisition or offer to acquire beneficial ownership of more than 10 percent of VFB's outstanding common stock for a period of one year after conversion, as required by 12 C.F.R. § 563b.

On December 27, 1983, pursuant to 12 U.S.C. § 1464(a) and 12 C.F.R. § 552.4, the Board of Directors of VFB ("Board") received preliminary approval from the FHLBB for what is now Section 8 of the Charter of VFB.[2] As part of its application

---

1. The tender offer named only the Trust as purchaser, but David LaRoche conceded that his interests in the tender offer and the Trust's interests were the same. David LaRoche and Laroche Grantor Income Trust Memorandum of Law in Support of Objection to Motion for Summary Judgment and Cross Motion for Summary Judgment dated November 27, 1985 at p. 2.

2. Section 8 of the VFB Charter states in pertinent part:

   *Limitations on Acquisitions of Control and Offers to Acquire Control:*

   A. *Vote Required for Acquisition of Control.* No person (as defined in subsection D hereof) shall acquire control (as defined in subsection D hereof) of the savings bank unless such acquisition has been approved prior to its consummation by the affirmative vote of the holders of at least two-thirds of the outstanding Voting Stock (as defined in subsection D hereof) entitled to vote at a duly constituted meeting of shareholders called for such purpose.

   B. *Excess Shares.* In the event that Control of the savings bank is acquired in viola-

for preliminary approval the Board had submitted an opinion of counsel that the proposed amendment was allowed by Vermont law. The legal opinion was that of Clarke Gravel, a director of VFB and counsel to Gravel, Shea and Wright, Ltd., the general counsel of VFB. VFB disclosed Mr. Gravel's status as a board director to the FHLBB in its proxy statement dated December 29, 1983. Attachment C to the Declaration of Cody dated September 16, 1985 at p. 4, 7. The shareholders of VFB approved Section 8 on January 30, 1984. Section 8 became effective on February 15, 1984, upon filing with the FHLBB, pursuant to 12 C.F.R. § 552.4.

## DISCUSSION

LaRoche attacks the legality of Section 8 of the VFB Charter on four grounds. First, LaRoche alleges that the approval of Section 8 by the FHLBB was invalid because the FHLBB acted arbitrarily and capriciously in approving it. Second, LaRoche claims that Section 8 violates the Williams Act. Third, they contend that the charter amendment violates Vermont law. Finally, it is alleged that Section 8 is an unreasonable restraint on trade. VFB and Cody oppose LaRoche's motion on all grounds. The Court will consider each of the issues raised by LaRoche *seriatium.*

### 1. Approval of Section 8 by the FHLBB

On December 27, 1983, upon the application of the Board of VFB pursuant to 12 U.S.C. § 1464(a) and regulations promulgated thereunder, 12 C.F.R. § 552.4(c) (anti-takeover provisions), the FHLBB gave preliminary approval to Section 8. FHLBB regulation 12 C.F.R. § 552.4(c) requires "an opinion, acceptable to the [FHLBB], of counsel independent from the [VFB] that the proposed Charter provision would be permitted to be adopted by a corporation chartered by the state in which the principal office of [VFB] is located." Accompanying the VFB application was a legal opinion of Mr. Gravel of Gravel, Shea and Wright, Ltd. that Vermont law permitted the charter amendment.

LaRoche attacks the preliminary approval of Section 8 by the FHLBB on two fronts. First, LaRoche claims that the legal opinion of Mr. Gravel did not qualify as an opinion of independent counsel because

tion of subsection A hereof, all shares of Voting Stock owned by the Person so acquiring Control in excess of the number of shares the beneficial ownership of which is deemed under subsection D.2 hereof to confer Control of the savings bank shall be considered from and after the date of their acquisition by such Person to be "excess shares" for purposes of this Section 8. Such excess shares shall thereafter no longer be entitled to vote on any matter or take other shareholder action or be counted in determining the total number of outstanding shares for purposes of any matter involving shareholder action, and the Board of Directors may cause such excess shares to be transferred to an independent trustee for sale on the open market or otherwise, with the expenses of such trustee to be paid out of the proceeds from such sale.

C. *Approval Required for Offers to Acquire Control.* No person shall make *any offer* (as defined in subsection D hereof) to acquire Control of the savings bank unless such Person has received prior approval to make such Offer by complying with either of the following procedures:
1. The Offer shall have been approved by two-thirds of all voting members of the Board of Directors; *or*

2. (a) Obtained from the Board, pursuant to Section 407(q) or Section 408(e) (as applicable) of the National Housing Act or any successor provision of law and as and in the manner provided by all applicable regulations of the Board promulgated thereunder, authority to acquire Control of the savings bank, such authority to have been obtained by (i) filing with the Board all notices, submissions and other documents or information required by such applicable law and regulations and (ii) receiving (in any such case) the Board's affirmative approval of, or (in cases governed by such Section 407(q) upon the Board's failure to disapprove following the expiration of all notice periods and any extensions thereof, the acquisition of Control by such Person as provided in such applicable law and regulations, and
(b) Furnished to the Board of Directors, concurrently with such Person's filing thereof with the Board, a complete copy of all notices, submissions and documents (including all exhibits thereto) and other information filed by such Person with the Board pursuant to such applicable law and regulations.

Mr. Gravel was a board director of VFB and counsel to the law firm serving as outside counsel to VFB. Additionally, LaRoche contends that the opinion of Mr. Gravel addressed the legality under Vermont law of only part of the proposed charter amendment. Thus, LaRoche argues that the approval of the amendment by the FHLBB was arbitrary and capricious.

The Second Circuit Court of Appeals has held that a lawyer, who is a board member and a member of the law firm acting as outside counsel to the corporation, is presumed to be a disinterested director. *Maldonado v. Flynn*, 597 F.2d 789, 794 (2d Cir.1979) (Weinfeld, J.). Disinterest was defined to be the "lack of any financial stake by a director in the transaction under consideration." *Id.* at 793. The court noted that until such time that board membership by outside counsel is forbidden the courts must assume that the outside counsel-director acts in a disinterested manner. *Id.* at 794. LaRoche argues that reliance on *Maldonado v. Flynn* is misplaced because the issue here does not turn on whether Mr. Gravel was a disinterested director, but whether he qualified as independent counsel.

■ Even assuming Mr. Gravel did not qualify as independent counsel in a technical sense, the FHLBB had the discretion under § 552.4(c) to accept Mr. Gravel's opinion. Mr. Gravel's status as a VFB board member was disclosed to the FHLBB in VFB proxy forms submitted to the FHLBB on December 29, 1983. LaRoche argues that this disclosure of Mr. Gravel's status was insufficient because it was made apart from the Section 8 approval application and it came two weeks after the FHLBB had given preliminary approval. This argument fails to acknowledge that notwithstanding the fact the disclosure came two weeks after preliminary approval it came six weeks before the effective date of Section 8. Moreover, the document in which the disclosure occurred was directly related to the formal approval of Section 8 because the disclosure was made in the

proxy statements presented to VFB shareholders in deciding whether to adopt Section 8.

The Court finds VFB's disclosure of Mr. Gravel's status to the FHLBB to have been sufficient to allow the FHLBB to determine whether, in its discretion, the FHLBB would accept it. Since the FHLBB sought no further opinions, the Court concludes that the FHLBB used its discretion as provided by the FHLBB regulation to accept Mr. Gravel's opinion and that the acceptance of the opinion by the FHLBB was in no way arbitrary or capricious. "The arbitrary and capricious standard is highly deferential; agency action is presumed to be valid." *Oneida Indian Nation of N.Y. v. Clark*, 593 F.Supp. 257, 262 (N.D.N.Y. 1984).

LaRoche also argues that the FHLBB acted arbitrarily and capriciously when it failed to follow § 552.4(c), which requires a legal opinion of the charter amendment's validity under state law. LaRoche claims that the submitted opinion of Mr. Gravel addressed incompletely the validity of Section 8 under Vermont law. Since the opinion of Mr. Gravel did not address the Section 8 provision providing for preapproval disclosure of an offer to the VFB board of directors, the Court agrees with LaRoche that the opinion was incomplete.

As stated earlier, § 552.4(c) gives the FHLBB discretion to accept the opinion of independent counsel regarding a charter's validity under state law. Clearly, if the FHLBB concluded that the opinion was insufficient it could have sought additional information. On the other hand, the FHLBB had the discretion to forego further information. The latter case can easily be understood given the FHLBB's openly stated purpose of using state law as a reference point *only:*

> The [FHLBB] does not view this policy [of analyzing state law] as an abandonment of its primacy over the operations of federal associations but rather as the federalization of state rules. The use of homestate corporate law as a referent allows federal associates to take advan-

tage of rapidly evolving state law. The Board, however, *retains full authority to independently judge the merits of proposed anti-takeover provisions.*

48 Fed.Reg. 44177 (9/28/83) (emphasis added).

█ Given its authority to pre-empt state law, its openly stated position to determine independently the merits of proposed charter provisions and its discretion under § 552.4, the Court cannot conclude that the failure of the FHLBB to seek a more complete assessment of the validity of Section 8 under Vermont law was arbitrary and capricious. "The [arbitrary and capricious] standard mandates judicial affirmance if a rational basis for the agency's decision is presented." *Environmental Defense Fund, Inc., v. Costle,* 657 F.2d 275, 283 (D.C.Cir.1981) (citing *Bowman Transportation, Inc., v. Arkansas-Best Freight Systems, Inc.,* 419 U.S. 281, 290, 95 S.Ct. 438, 444, 42 L.Ed.2d 447 (1974)).

## 2. Allegations of Williams Act Violations

LaRoche claims that Section 8 violates the Williams Act and 17 C.F.R. § 240.14d–2 concerning offers to purchase. He argues that Section 8 violates the Williams Act because it requires an offeror seeking to acquire more than 10% ownership of VFB to receive a two-thirds vote of the VFB Board or to obtain approval of the FHLBB along with furnishing copies to the VFB Board. LaRoche claims that the pre-offer submittal to the VFB Board or the FHLBB constitutes a tender offer under the SEC's expansive view of offers. LaRoche Memo-

randum of Law dated November 27, 1985 at p. 13–15. Since it is a tender offer, LaRoche continues, it must meet the disclosure requirements of Regulation 14D which neither alternative of Section 8 does.[3]

LaRoche's argument misses a critical point. Congress charged the FHLBB with enforcing the securities laws concerning federal savings institutions and the FHLBB approved Section 8. Securities Exchange Act of 1934 § 12(i), 15 U.S.C. § 78l(i) (1982); 12 C.F.R. § 563d.1 (1985). "In respect to any securities issued by insured institutions, the powers, functions and duties vested in the Securities and Exchange Commission (the 'Commission') to administer and enforce sections 12, 13, 14(a), 14(c), 14(d), 14(f), and 16 of the Securities Exchange Act of 1934 are vested in the [FHLBB] effective October 28, 1974." 12 C.F.R. § 563d.1.

Additionally, the Section 8 requirements on the acquisition of stock, as approved by the FHLBB, are supported by public policy. The current upheavals in the banking system warrant some controls being placed on the buying and selling of bank ownership, especially for recently converted banks:

By its action, the [FHLBB] sought to lessen the vulnerability of newly-converted institutions to attempts to take unfair advantage of the results of conversion, to protect, in a variety of other respects, the integrity of the conversion process and to insure that conversions are accomplished in a manner that strengthens the converting association and are consistent

---

**3.** Rule 14d–3(a) requires the following disclosure of the bidder:

1. Files with the Commission ten copies of a Tender Offer Statement on Schedule 14D–1, including all exhibits thereto;

2. Hand delivers a copy of such Schedule 14D–1 ·including all exhibits thereto..

i) To the subject company at its principal executive office; and

ii) To any other bidder, which has filed a Schedule 14D–1 with the commission relating to a tender offer which has not yet terminated for the same class of securities of the subject company, at such bidder's principal executive office or at the address of the person authorized to receive notices and communications (which is disclosed on the cover sheet of such other bidder's Schedule 14D–1);

3. Gives telephone notice of the information required by Rule 14d–6(e)(2)(i) and (ii) and mails by means of first class mail a copy of such Schedule 14D–1, including all exhibits thereto:

i) To each national securities exchange where such class of the subject company's securities is registered and listed for trading.... and

ii) To the National Association of Securities Dealers, Inc., ("NASD") if such class of the subject company's securities is authorized for quotation in the NASDAQ interdealer quotation system.

with the purposes of the conversion program.

49 Fed.Reg. 7356 (Feb. 29, 1984) (citing 41 Fed.Reg. 50414 (Nov. 16, 1976)).

■ VFB sought and received FHLBB approval of Section 8 and subsequently received stockholder approval. The Court finds Section 8 to have been validly approved by the FHLBB under its authority and holds that Section 8 does not violate the Williams Act.[4]

### 3. Alleged Violation of Vermont Law

The legal opinion of Mr. Gravel submitted to the FHLBB pursuant to § 552.-4(c) has been attacked by LaRoche on grounds that Mr. Gravel failed to analyze completely the validity of Section 8 under Vermont law and this Court has agreed with LaRoche. Additionally, LaRoche contends that § 1862, § 1879 and § 1926 of the Vermont Business Corporation Act do not support VFB's position that Section 8 is valid under Vermont law.

Section 1862 permits a corporation "[to] limit or deny the voting rights of ... the shares of any class to the extent not inconsistent with the provisions of this Chapter." Section 1879 allows the Articles of Association to limit stock voting rights. Section 1926 provides that a corporate charter may contain "[a] provision not inconsistent with law which the incorporators elect to set forth." LaRoche contends that these provisions do not support the validity of Section 8 because they focus on the internal affairs of the company. LaRoche notes correctly that tender offers do not implicate the internal affairs of the target company. *Edgar v. Mite Corp.*, 457 U.S. 624, 645, 102 S.Ct. 2629, 2642, 73 L.Ed.2d 269 (1982).

Assuming the stretched interpretation that the cited Vermont statutes do not support VFB's contention of the validity of Section 8, LaRoche has not cited any statutes or case law that justifies a contrary conclusion. To reach that end point LaRoche argues circuitiously and erroneously that preacquisition disclosures to incumbent management violate the Williams Act and the Commerce Clause and therefore Section 8 must violate Vermont law. This Court has already found that no Williams Act violations exist and that the FHLBB validly approved Section 8.

■ No Vermont law has been cited by any party on this question and the Court has not found any; thus, the Court operates in a vacuum.[5] The Court concludes that taking the position most favorable to LaRoche, the validity of Section 8 under Vermont is unresolved. However, since the FHLBB views state law as a reference point only and retains independent authority to approve federal savings bank charters notwithstanding state law the resolution of Vermont law is not critical to the validity of Section 8. *See* 48 Fed.Reg. 44177 (9/28/83).

### 4. Alleged Unreasonable Restraint on Alienation

Finally, LaRoche argues that Section 8 is an unreasonable restraint on alienation. They contend that except by preacquisition disclosure of a tender offer to the VFB Board all acquisition routes of certain offerors are foreclosed and the stockholders' ability to sell their stock extremely limited. LaRoche's Memorandum of Law dated November 27, 1985 at p. 20.

LaRoche notes the general disfavor of courts concerning restraints on alienation. *Glenn v. Seaview*, 154 N.J.Super. 69, 380

---

**4.** Since the Court found no Williams Act violations the Court need not address VFB's contention that the preacquisition disclosure required by Section 8 does not violate the Williams Act because the disclosure is confidential. Reply Memorandum of VFB in Support of its Motion for Summary Judgment dated December 6, 1985 at p. 9.

**5.** VFB cited a recently approved charter of a federal savings stock institution, but the Court, recognizing the pre-emptive authority of federal regulation over state law, is not convinced the Vermont Secretary of State's approval supports VFB's position that Vermont law permitted the charter. VFB's Memorandum in Support of the Motion for Summary Judgment dated October 2, 1985 at p. 9, n. 2.

A.2d 1175, 1177 (1977); *Globe v. Hasner*, 333 F.2d 413, 415 (2d Cir.1964) *cert. denied* 379 U.S. 969, 85 S.Ct. 666, 13 L.Ed.2d 562 (1965). He cites *Tracey v. Franklin*, 31 Del.Ch. 477, 67 A.2d 56, 59–60 (1949) for the proposition that the validity of restrictions on transfers must be authorized by statute, reasonable in nature and not contrary to public policy. LaRoche states that no Vermont statute authorizes the Section 8 restrictions and that the restrictions are unreasonable. LaRoche's Memorandum of Law dated November 27, 1985 at p. 20. LaRoche contends no public policy is met by Section 8 because it serves only to retain control for and promote the policies of the incumbent management. *Id.*

■ Section 8 was validly approved by the FHLBB under its authority to regulate federal savings banks. Congress explicitly gave the FHLBB the power to govern federal savings bank charters:

> In order to provide local mutual thrift institutions in which people may invest their funds in order to provide for financing of homes, the Board is authorized, under such rules and regulations as it may prescribe, to provide for the *organization*, incorporation, examination, operation and *regulation* of associations to be known as "Federal Savings and Loan Associations" or "Federal Mutual Savings Banks" ... and *to issue charters* therefor.

12 U.S.C. § 1464(a)(1) (1976 ed., Supp.IV) (emphasis added). Further, "Congress plainly envisioned that federal savings and loans would be governed by what the Board—not any particular State—deemed to be the 'best practices'." *Fidelity Federal Savings & Loan Association v. DeLa Cuesta* 458 U.S. 141, 161, 102 S.Ct. 3014, 3026, 73 L.Ed.2d 664 (1981). "Federal regulations have no less pre-emptive effect than federal statutes." *Id.* at 153, 102 S.Ct. at 3022.

■ Beyond the authority of the FHLBB to approve Section 8, valid public policy reasons support its validity. Stock restrictions, such as Section 8, encourage mutual banks to convert to stock banks thus placing the banks on more solid financial structures. These restrictions are especially important during the vunerable times right after conversion when the banks are clear take-over targets. Further, the Court believes that the Section 8 restrictions are reasonable.[6] Stockholders are not prohibited from selling their shares and stock purchasers with more than 10% ownership of VFB may retain and vote the excess shares if they follow one of the two options in Section 8. Therefore, the Court finds no unreasonable restraint on alienation.

## CONCLUSION

Section 8 of the VFB Charter is valid and enforceable. The motion for summary judgment of LaRoche is DENIED and judgment is entered in favor of VFB and Cody.

SO ORDERED.

6. The Court is assuming that Section 8 is a restriction on alienation, although VFB claims it is not because the shares are negotiable. *Moran v. Household International, Inc.,* 490 A.2d 1059, 1079 (Del.Ch.1985) (no restriction on alienation even though the stockholders' rights to sell shares are limited because the negotiability of the shares is not conditioned).